| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| Baruch C. Cohen, Esq. (159455)<br>Law Office of Baruch C. Cohen, APLC<br>4929 Wilshire Boulevard, Suite 940<br>Los Angeles, CA 90010<br>Office (323) 937-4501 \| Cell (323) 353-9535<br>Facsimile: (888) 316-6107<br>Email: bcc@baruchcohenesq.com | |

☐ *Plaintiff(s) appearing without attorney*
☒ *Attorney for Plaintiff(s)*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - **LOS ANGELES DIVISION**

| In re:<br>LESLIE KLEIN<br><br>Debtor(s). | CASE NUMBER: 2:23-bk-10990-SK<br>ADVERSARY NUMBER: 2:23-ap-01153-SK<br>CHAPTER: 11 |
|---|---|
| ROBERT & ESTHER MERMELSTEIN<br><br>Plaintiff(s),<br>vs.<br>LESLIE KLEIN<br><br>Defendant(s). | **PLAINTIFF'S MOTION FOR DEFAULT<br>JUDGMENT UNDER LBR 7055-1**<br><br>DATE: 2/14/2024<br>TIME: 9:00 am<br>COURTROOM: 1575<br>ADDRESS: 255 E. Temple Street, Los Angeles |

**TO THE DEFENDANT, DEFENDANT'S ATTORNEY AND OTHER INTERESTED PARTIES:**

1. Name of Defendant(s) against whom default judgment is sought (*specify name*): LESLIE KLEIN
_____

2. Plaintiff filed the complaint in the above-captioned proceeding on (*specify date*): 05/12/2023

3. The Summons and Complaint were served on Defendant by    ☐ personal service    ☒ mail service
on the following date (*specify date*): 05/17/2023

4. A true and correct copy of the completed return of summons form is attached.

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure. "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5.  The time for filing an answer or other response expired on (*specify date*): 07/12/2023

    Defendant was later ordered to respond to the Complaint by 11-18-2023

6.  No answer or other response has been filed or served by Defendant.

7.  The default of Defendant:

    a.  ☐ Has not yet been entered, but is requested

    b.  ☒ Was entered on (*specify date*): 11/28/2023

8.  **A Status Conference:**

    a.  ☒ Is scheduled for (*specify date, time, and place*): _____
        12/20/2023 at 09:00 AM 255 E. Temple St. Courtroom 1575 Los Angeles _____

    b.  ☐ Was held on (*specify date, time, and place*): _____
        _____

9.  As proof that Plaintiff is entitled to the relief requested in the complaint, Plaintiff:

    a.  ☒ Relies on the complaint and attached documents.

    b.  ☒ Attaches the following documents to establish a *prima facie* case:

        (1) ☒ Declaration of (*specify*): ROBERT MERMELSTEIN_____

        (2) ☐ Declaration of (*specify*): _____

        (3) ☐ Other (*specify*): _____

10. As further support for entry of a default judgment, Plaintiff submits a memorandum of points and authorities (optional).

11. **DECLARATION OF NON-MILITARY STATUS (**Servicemembers Civil Relief Act, 50 U.S.C. chapter 50 (§§ 3901-4043)).  The undersigned party or counsel declares under penalty of perjury, with respect to each Defendant against whom a default judgment is sought by this motion:

    a.  ☒ Defendant is not currently in military service.  The facts that support this statement are as follows (*see the court's website for information about how to verify non-military status*):

    b.  ☐ Defendant is currently in military service.  The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the requirements in 50 U.S.C. § 3931(b)(2) to appoint an attorney for the Defendant before entering a judgment*):

    c.  ☐ I am unable to determine whether or not Defendant is in military service.  The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the bond requirement in 50 U.S.C. § 3931(b)(3)*):

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017*                    Page 2                    **F 7055-1.2.DEFAULT.JMT.MOTION**

12. Defaulting party is not an infant or incompetent party.

Plaintiff requests that this court enter a default judgment in favor of Plaintiff.  A copy of the lodged proposed default judgment is attached.

Date: __1/10/2024__

Respectfully submitted,

Law Office of Baruch C. Cohen, APLC
_____
Printed name of law firm

_____
Signature

Baruch C. Cohen, Esq.
_____
Name of Attorney for Plaintiff or Plaintiff

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017*                                    Page 3                                    **F 7055-1.2.DEFAULT.JMT.MOTION**

Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
    A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Tel: (323) 937-4501   Fax: (888) 316-6107
email: baruchcohen@baruchcohenesq.com

*Attorney For Plaintiffs Robert & Esther Mermelstein*

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES ANA DIVISION

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-SK |
| LESLIE KLEIN, | Hon.  Sandra Klein |
| Debtor and Debtor in Possession, | Adv. Proc. No.: 2:23-ap-01153-SK |
| | Chapter 11 |
| ROBERT & ESTHER MERMELSTEIN, | **PROOF OF SERVICE OF:** |
| Plaintiffs | |
| vs. | • **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO  11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)** |
| LESLIE KLEIN | |
| Defendant | |
| | • **ANOTHER SUMMONS ISSUED ON LESLIE KLEIN; &** |
| | • **EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS** |

DATED:    May 16, 2023

LAW OFFICE OF BARUCH C. COHEN
    A Professional Law Corporation

  /s/ Baruch C. Cohen_____
Baruch C. Cohen, Esq.
*Attorney For Creditors Robert & Esther Mermelstein*

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Baruch C Cohen<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br><br>323–937–4501<br><br><br><br><br><br>*Plaintiff or Attorney for Plaintiff* | FOR COURT USE ONLY |
|---|---|

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES**

| In re:<br><br><br>Leslie Klein<br><br><br><br>Debtor(s). | CASE NO.:  2:23-bk-10990-SK<br><br>CHAPTER:  11<br><br><br>ADVERSARY NUMBER: 2:23-ap-01153-SK |
|---|---|
| Robert & Esther Mermelstein<br><br><br>Plaintiff(s)<br>Versus<br><br>Leslie Klein<br><br><br>Defendant(s) | **ANOTHER**<br>**SUMMONS AND NOTICE OF STATUS**<br>**CONFERENCE IN ADVERSARY**<br>**PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **06/12/2023.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

 A status conference in the adversary proceeding commenced by the Complaint has been set for:

|  |  |
|---|---|
| **Date:** | **August 9, 2023** |
| **Time:** | **09:00 AM** |
| **Hearing Judge:** | **Sandra R. Klein** |
| **Location:** | **255 E Temple St., Crtrm 1575, Los Angeles, CA 90012** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

 

 

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

 

Date of Issuance of Alias Summons and Notice of Status Conference in Adversary Proceeding: May 12, 2023

 

By: _____ "s/" Thais D. May _____

Deputy Clerk



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
   A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Tel: (323) 937-4501   Fax: (888) 316-6107
email: baruchcohen@baruchcohenesq.com

*Attorney For Plaintiffs Robert & Esther Mermelstein*

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES ANA DIVISION

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-SK |
| LESLIE KLEIN, | Hon.  Sandra Klein |
|      Debtor and Debtor in Possession, | Chapter 11 |
| ROBERT & ESTHER MERMELSTEIN,<br><br>     Plaintiffs<br><br>vs.<br><br>LESLIE KLEIN<br><br>     Defendant | **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO  11 USC § 523(a)(2)(A),  11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)** |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED PARTIES**:

Plaintiffs-Creditors, Robert & Esther Mermelstein ("Plaintiffs"), complain for nondischargeability of debt & for denial of discharge against Defendant-Debtor, Leslie Klein ("Defendant"), and alleges respectfully as follows:

**CORE/NON-CORE DESIGNATION**

1.     In accordance with Local Bankruptcy Rule 7008-1, Plaintiffs allege that this adversary proceeding constitutes a core proceeding under 28 USC § 157(b)(2). Plaintiffs acknowledge that the Court has the power to enter final orders and judgments in this

matter. Plaintiffs also consent to the Court's entry of final orders and judgments in this

matter under FRBP Rule 7008..

### JURISDICTION, VENUE & STANDING

2.   This adversary proceeding arises under *In re Klein*, 2:23-bk-10990-SK, a Chapter 11 case

commenced in the United States Bankruptcy Court for the Central District of California

("Bankruptcy Case"). The Court has jurisdiction under 11 USC §§ 523 and 727, and 28

USC §§ 157 and 1334.

3.   The venue is proper in this Court pursuant to 28 USC § 1409.

4.   Plaintiffs have standing to bring this action because Plaintiffs are creditors in the

Bankruptcy Case under 11 USC § 101(10).

### PARTIES

5.   The following is a description of the relevant parties involved in the facts forming the

basis of this Complaint.

6.   Plaintiffs are individuals, senior citizens residing in Brooklyn, NY.

7.   Defendant is an individual, whose principal residence is in Los Angeles County,

California and who regularly conducted business from Los Angeles County, California.

Defendant was a certified public accountant, formerly licensed by the State of California,

and a former, and an attorney licensed by the State of California.[1] Defendant is the debtor

in the above-captioned Chapter 11 bankruptcy case.

///

---

[1]   On September 10, 1992, the Supreme Court of the State of California, in State Bar Court Case No. 86-O-14258, ordered that Defendant be suspended from the practice of law for 18 months and further ordered that he take and pass the California Professional Responsibility Examination ("CPRE"). Defendant failed the November 1993 and January 1994 CPREs. In Case No. 86-O-14258, Defendant admitted to intentional misrepresentations. On August 3, 1995, the Supreme Court of the State of California, in State Bar Court Case No. 92-O-11716 (consolidated with Case Nos. 93-O-11825, 94-O-13951, 94-O12055, and 94-O15901) ordered that Defendant be suspended from the practice of law for one year. In Case No. 92-O-11716, as consolidated, Defendant admitted to willful violations of Rules of Professional Conduct concerning client trust accounts and conflicts of interest.

## GENERAL ALLEGATIONS

8.  The following general allegations form the background for the Plaintiffs' claims for relief against Defendant.

9.  Plaintiffs are family relatives of Defendant, are Orthodox Jews, and are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

10. Defendant,  on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") solicited Plaintiffs to invest in at least seven (7) life insurance policies: (1) Garza; (2) Times Square; (3) Ganz; (4) Spitzer; (5) Kohn; (6) Friedman; & (7) Zimmerman.

## GARZA

11. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Garza Memo"). The purpose of the Garza Memo, was to purchase a $1,000,000.00 life insurance Policy ("Garza Policy"); American General on the life of Emanuel Garza ("Garza"). In furtherance of the Garza Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of the Garza Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Garza Memo, Defendant promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

12. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Garza), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

13. Plaintiffs are informed and believe that Defendant sold 50% to the Garza Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan without their consent.

14. Plaintiffs are informed and believe that Garza apparently died in 2018, and on or about 7-

2-2018, Defendant collected the Garza Proceeds, on the Garza Policy. Defendant

concealed this information from Plaintiffs, misappropriated & kept the Garza Proceeds

for himself, and failed to pay Plaintiffs the $500,00.00 per the Garza Memo.

**TIMES SQUARE**

15.    On 7-16-2012, Defendant issued Plaintiffs a Non-Recourse Promissory Note, in the

amount of $333,333.00, due and payable by 7-16-2013, by Defendant on behalf of the

Times Square Media Inc., containing a "*Heter Iska*" document (an approved way of

restructuring a loan or debt so that it becomes an investment instead of a loan, per

*Halacha* - Jewish law).

16.    Plaintiffs are informed and believe that Defendant had no intention of paying the Times

Square Non-Recourse Promissory Note, as Plaintiffs made no payments whatseoever.

**GANZ**

17.    On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

Venture with plaintiffs (the "Ganz Memo"). The purpose of the Ganz Memo, was to

purchase a $1,000,000.00 life insurance Policy ("Ganz Policy"); American General on

the life of Emanuel Ganz ("Ganz"). In furtherance of the Ganz Memo, Plaintiffs paid

Klein $100,000.00 towards the purchase of the Ganz Policy. Defendant instructed

Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account.

Per the Ganz Memo, Defendant promised to pay the Mermelstein Trust $500,000.00

($400,000.00 plus return of premiums paid; plus $100,000.00).

18.    On 4-30-2021, Defendant executed a First Amendment to the  Memorandum of

Agreement for Joint Venture (Ganz), changing the recipient of the $500,000.00 from the

Mermelstein Trust to Robert & Esther Mermelstein.

19.    Plaintiffs are informed and believe that Defendant apparently sold 50% to the Ganz

Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan,

without Plaintiff's consent.

20. Plaintiffs are informed and believe that Ganz apparently died in 2018, and on or about 7-2-2018, Defendant collected the Ganz Proceeds, on the Ganz Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Ganz Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Ganz Memo.

**SPITZER**

21. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Spitzer Memo"). The purpose of the Spitzer Memo, was to make premium payments of a $5,000,000.00 life insurance Policy Number: US 0023546L ("Spitzer Policy"); American General on the life of Malvine Spitzer ("Spitzer"). In furtherance of the Spitzer Memo, Plaintiffs paid Defendant $250,000.00 towards the purchase of the Spitzer Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Spitzer Memo, Defendant promised to pay the Mermelstein Trust $2,250,000.00 ($2,000,000 plus $250,000 and all premiums paid of the proceeds).

22. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

23. Plaintiffs are informed and believe that Defendant apparently sold portions of the Spitzer Policy, without their consent - but Plaintiffs do not know to whom. Defendant concealed this information from Plaintiffs.

**KOHN**

24. On 3-10-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Kohn Memo"). The purpose of the Kohn Memo, was to make premium payments of a $3,000,000.00 life insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn ("Kohn"). In furtherance of the Kohn

Memo, Plaintiffs paid Defendant $200,000.00 towards the purchase of the Kohn Policy.

Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney

Client Trust Account.  Per the Kohn Memo, Defendant promised to pay the Mermelstein

Trust $1,200,000.00 ($200,000 and $1,000,000 and all premiums paid of the proceeds).

25.  On 4-30-2021, Klein executed a First Amendment to the  Memorandum of Agreement for

Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein

Trust to Robert & Esther Mermelstein.

26.  Plaintiffs are informed and believe that Defendant paid premiums of the Kohn Policy up

to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Kohn

Policy - without Plaintiffs' consent - to Life Capital Group, LLC ("LCG"), where Shlomo

Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from

2011 onwards. Defendant concealed this information from Plaintiffs.

27.  According to information recently received by Plaintiffs  an unsigned Amended and

Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant

and Rechnitz agreed that upon the death of Kohn, Defendant and Rechnitz would be

reimbursed the premiums that they paid, plus interest on the premiums. Thereafter,

Defendant and Rechnitz would split the profits 50/50 of the Kohn Policy, and that

Plaintiffs would receive their $1,200,000.00.

**FRIEDMAN**

28.  On 3-1-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

Venture with Plaintiffs (the "Friedman Memo"). The purpose of the Friedman Memo,

was to purchase a $1,500,000.00 life insurance Policy ("Friedman Policy"); American

General on the life of Goldie Friedman ("Friedman"). In furtherance of the Friedman

Memo, Plaintiffs paid Klein $250,000.00 towards the purchase of the Friedman Policy.

Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney

Client Trust Account.  Per the Friedman Memo, Defendant promised to pay the

Mermelstein Trust $1,000,000.00 ($250,000.00 and $750,000.00 and all premiums paid of the proceeds).

29. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Friedman), changing the recipient of the $1,000,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

30. Plaintiffs are informed and believe that Defendant apparently sold portions of the Friedman Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without Plaintiff's consent.

31. Plaintiffs are informed and believe that Friedman apparently died in 2020, and Defendant collected the Friedman Proceeds, on the Friedman Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Friedman Proceeds for himself, and failed to pay Plaintiffs the $1,000,000.00 per the Friedman Memo.

**ZIMMERMAN**

32. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Zimmerman Memo"). The purpose of the Zimmerman Memo, was to purchase a $9,000,000.00 life insurance Policy ("Zimmerman Policy"); American General Policy # US 0023738L on the life of Rozy Pearl Zimmerman ("Zimmerman"). In furtherance of the Zimmerman Memo, Plaintiffs paid Defendant $150,000.00 towards the purchase of the Zimmerman Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Zimmerman Memo, Defendant promised to pay the Mermelstein Trust $2,400,000.00 ($2,250,000.00 plus $150,000.00).

33. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Zimmerman), changing the recipient of the $2,400,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

34. Plaintiffs are informed and believe that Defendant paid premiums of the Zimmerman

Policy up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Zimmerman Policy to Life Capital Group, LLC ("LCG") - without Plaintiffs' consent - , where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman Policy premiums from 2011 onwards. Defendant concealed this information from Plaintiffs.

35.    Defendant, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust (the "Zimmerman Trust") issued three Non-Recourse Promissory Notes  (the "Zimmerman Notes") to Plaintiffs secured by the Zimmerman Policy in the amount of $2,357,679.50:

    a.    Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June 15, 2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

    b.    Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated December 7, 2009 - due December 7, 2019 (the: "$570,000.00 Zimmerman Note");

    c.    Non-Recourse Promissory Notes # 2, principal sum of $375,000.00, dated January 14, 2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

    d.    Interest on the three Non-Recourse Zimmerman Notes until 4-30-2023 comes to $2,939,936.84. Therefore the total amount of the claim is: $7,697,616.34 ($2,400,000.00 (Zimmerman Policy) + $2,357,679.50 (3 Zimmerman Notes) + 2,939,936.84 (interest) =  $7,697,616.34.

36.    According to information recently received by Plaintiffs, an unsigned Amended and Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz agreed that upon the death of Zimmerman, Defendant and Rechnitz  would be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz would split the profits 50/50 of the Zimmerman Policy, and that Plaintiffs would receive their $2,400,000.00.  Defendant concealed this information from Plaintiffs.

-8-

**PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT**

37.     During this entire time, Defendant repeatedly assured Plaintiffs that their investments in the 7 policies were secure and accruing interest. Defendant mailed Plaintiffs periodic monthly checks of $5,000.00 issued from Defendant's IOLTA - Attorney Client Trust Account.

**PLAINTIFFS' DISCOVERY OF DEFENDANT'S FRAUD**

38.     On or about 1-21-2021, Plaintiffs discovered the above-referenced frauds and concealment.

39.     On or about 6-22-2022, Defendant wrote Plaintiffs assuring them that their investments were "secure" when in reality, Defendant sold them off to third parties without Plaintiffs' consent:

I received you e mail and I disagree. I paid in on the Zmerman policy over $1,000,000. The interest for the last 10 years is over $2,300,000 . I also own 25%of the profits. ***You are well secured***. You can call me if you have any questions. [Emphasis Added]

40.     On or about 7-18-2022, Defendant wrote Plaintiffs admitting that he used Plaintiffs' monies from the Friedman Garza and Gans to pay for his legal fees in his lawsuit with Rechnitz.

I got your email. I want to make it very clear we are family and I don't want to fight. I think I can make a deal with Rechnitz because I have the best lawyers in LA. If not we will go to court. I have big leverage on Rechnitz due to the Menlo case. I am not assigning the Zimmerman case to you. ***I am using the money from the Friedman Garza and Gans cases for attorney fees in the Rechnitz case***. On Zimmerman Rechnitz I paid $4,000,000 in premiums but it is return of premium. We also gave Mrs Zimmerman $200,000. I am sure they will sue to get more. It is a big policy and all big policies have big fights. [Emphasis Added]

**PLAINTIFFS' PROOF OF CLAIMS**

41.     Plaintiffs timely filed seven (7) *Proofs of Claim* against Defendant totaling $13,480,949, primarily based on Defendant misappropriating insurance policies and the proceeds, as follows:

a.      Claim # 19-1 (Garza) $500,000.00;

b.      Claim # 20-1 (Times Square) $333,333.00;

c.    Claim # 21-1 (Ganz) $500,000.00;

d.    Claim # 22-1 (Spitzer) $2,250,000.00;

e.    Claim # 23-1 (Kohn) $1,200,000.00;

f.    Claim # 24-1 (Friedman) $1,000,000.00; &

g.    Claim # 25-2 (Zimmerman) $7,697,616.34.

TOTAL:    **$13,480,949**

### FIRST CLAIM FOR RELIEF
#### (Nondischargeability of Debt - 11 USC § 523(a)(2)(A))

42.    Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

43.    At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

44.    Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

45.    Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

46.    Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

47.    As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

than $13,480,949.

48.   Defendant's debt to Plaintiffs is nondischargeable under 11 USC § 523(a)(2) because it
      was incurred as a result of false pretenses, false representations, and actual fraud.

49.   The damages arising from Defendant's willful and malicious false pretenses, false
      representation and actual fraud to Plaintiffs constitutes a debt against Defendant that is
      nondischargeable pursuant to 11 USC § 523(a)(2)(A).

**SECOND CLAIM FOR RELIEF**
**(Nondischargeability of Debt - 11 USC § 523(a)(4))**

50.   Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations
      in this Complaint as though fully set forth herein.

51.   At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser.
      Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

52.   Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of
      loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate
      business purposes and to refrain from using their funds and other property for his own
      personal non-business purposes.

53.   Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-
      referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in
      additional policies into Defendant's IOLTA client trust account. Defendant then stole
      more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam,
      constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and
      elder abuse.

54.   Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized,
      without their consent and fraudulent. Defendant acted with the intent to permanently
      deprive Plaintiffs of the possession, use and benefit of their funds and other property.

55.   As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs'
      funds and other property and Defendant's false pretenses, false representations, and
      actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

than $13,480,949.

56. The damages to Plaintiffs arising from Defendant's fraud, defalcation, embezzlement and larceny while acting in a fiduciary capacity constitutes a debt against Defendant that is non-dischargeable pursuant to 11 USC § 523(a)(4).

**THIRD CLAIM FOR RELIEF**
**(Nondischargeability of Debt - 11 USC § 523(a)(6))**

57. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

58. At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

59. Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

60. Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

61. Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

62. As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less than $13,480,949.

63. The damages to Plaintiffs arising from Defendant's willful and malicious injury to

Plaintiffs constitutes a debt against Defendant that is non-dischargeable pursuant to 11 USC § 523(a)(6).

## FOURTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(2)(A))

64.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

65.  Plaintiffs are informed and believe that within one year before the Petition, Defendant transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

66.  As of the dates of the transfers, removals, and/or concealments of Defendant's property, Defendant had one or more unsecured creditors.

67.  The transfers, removals, and/or concealments of Defendant's property prevented the distribution of Defendant's property to Defendant's unsecured creditors.

68.  Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's creditors, including, without limitation, Plaintiffs, transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

69.  By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of Defendant's property with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(A).

70.  Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

71.  Defendant has a reckless indifference to the truth.

## FIFTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(2)(B))

72.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

73.  Plaintiffs are informed and believe that After the Petition, Defendant transferred,

1    removed, concealed, and/or permitted to be transferred, removed, and/or concealed,

2    property of the Bankruptcy estate.

3    74.   As of the dates of the transfers, removals, and/or concealments of the property of the

4          estate, Defendant had one or more unsecured creditors.

5    75.   The transfers, removals, and/or concealments of the property of the estate prevented the

6          distribution of this property to Defendant's unsecured creditors.

7    76.   Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's

8          creditors, transferred, removed, and/or concealed, or permitted to be transferred,

9          removed, and/or concealed, property of the estate.

10   77.   By transferring, removing, concealing, and/or permitting the transfer, removal, and/or

11         concealment of estate property, with the intent to hinder, delay, and/or defraud at least

12         one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(B).

13   78.   Defendant failed to list valuable property on his schedule of assets and failed in his

14         statement of affairs to disclose property transfers.

15   79.   Defendant has a reckless indifference to the truth.

16                              **SIXTH CAUSE OF ACTION**
                   **(Objection to Debtor's Discharge  11 USC § 727(a)(3)**
17

18   80.   Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

19         in this Complaint as though fully set forth herein.

20   81.   Plaintiffs are informed and believe that Defendant has not maintained adequate books

21         and records from which Debtor's financial condition can be ascertained. Debtor has

22         consistently not maintained adequate books and records. His failure to keep adequate

23         books and records is not justified considering the circumstances articulated in this

24         Complaint.

25   82.   Defendant has concealed, destroyed, falsified, and/or failed to keep or preserve

26         information from which Defendant's financial condition and/or business transactions

27         might be ascertained.

28   83.   Defendant has not been cooperative with the Office of the United States Trustee

                                        -14-

("OUST") or with his creditors. Defendant has intentionally withheld records, books, documents, and/or other papers relating to Defendant's property and/or financial affairs.

84.  Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(3).

## SEVENTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(4))

85.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

86.  Plaintiffs are informed and believe that Defendant has not made simple isolated errors or omissions in his Bankruptcy filings. Defendant's filings, such as his schedules and statement of affairs, do not reflect inadvertence or incompetence; rather, they exhibit fraudulent intent.

87.  Defendant has a pattern of misleading conduct.

88.  Defendant has a reckless indifference to the truth.

89.  Defendant has failed to list assets in his schedules.

90.  Defendant has falsely testified in the 341 Meeting.[2]

---

[2]    At the 3-13-2023 341(a) Meeting, Defendant at circa 11:15 testified in response to omissions to be brought to the attention of the United States Trustee ("UST"), that there were only "three minor errors" which he thought that his attorney corrected. Defendant testified that there were "no" errors related to any assets that he owns. At circa 12:52, Defendant testified that he identified all assets on his schedules. Defendant at circa 1:18:30-1:09:21 testified that in the year before the Bankruptcy, he received no commissions from his third-party life insurance deals. At circa 1:20:18, Defendant testified that he has not ever collected money on his third-party life insurance deals. At circa 1:22:18, Defendant testified that he has never received a payoff on his third-party life insurance deals. At circa 1:23:21, Defendant testified that four people have died and that he has received no money. Defendant at circa 1:39:00 testified, in response to whether he had transactions with Shlomo Rechnitz in the last five or six months relating to the thirdparty life insurance policies, "nope." Defendant testified that he does not remember paying the premiums for these policies out of his attorney client trust account at any time. Defendant at circa 1:40:03 testified that he does not remember depositing his own funds into his attorney-client trust account so that these insurance premiums could be paid. In response to the question of whether Defendant traveled out of the country anywhere recently, other than Israel, Defendant at circa 2:23:00 testified, "nope." In response

91. Defendant has knowingly and fraudulently made false oaths and/or accounts in the Bankruptcy Case.

92. Defendant has failed to provide records which are necessary for the OUST and his creditors to properly understand Defendant's financial condition and/or recent business transactions.

93. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(4).

**EIGHTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge  11 USC § 727(a)(5)**

94. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

95. Defendant has failed to explain satisfactorily his deficiency and/or loss of assets to meet Debtor's liabilities. No determination has yet been made of an entitlement to a discharge in this Bankruptcy Case.

96. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment on the Complaint as follows:

1. On the First Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(2)(A);

2. On the Second Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(4);

3. On the Third Claim for Relief, Plaintiffs seek an order determining that Defendant is

to the question of whether Defendant has bank accounts in Israel, Defendant at circa 2:26:48 testified, "nope." Defendant at circa 2:59:15 testified that he has not transferred any assets within the last year to a third party. Defendant at circa 2:59:33 testified that he has not given any gifts more than $12,000.00 to his family.

-16-

1  indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is

2  excepted from discharge pursuant to 11 USC § 523(a)(6);

3  4.  On the Fourth Claim for Relief,  Plaintiffs seek an order denying Defendant his discharge

4  pursuant to 11 USC § 727(a)(2)(A);

5  5.  On the Fifth Claim for Relief,  Plaintiffs seek an order denying Defendant his discharge

6  pursuant to 11 USC § 727(a)(2)(B);

7  6.  On the Sixth Claim for Relief,  Plaintiffs seek an order denying Defendant his discharge

8  pursuant to 11 USC § 727(a)(3);

9  7.  On the Seventh Claim for Relief,  Plaintiffs seek an order denying Defendant his

10  discharge pursuant to 11 USC § 727(a)(4);

11  8.  On the Eighth Claim for Relief,  Plaintiffs seek an order denying Defendant his discharge

12  pursuant to 11 USC § 727(a)(5);

13  9.  For costs of suit incurred herein; and

14  10.  For such other and further relief as the Court may deem appropriate.

15  
16  DATED:      May 12, 2023          LAW OFFICE OF BARUCH C. COHEN
                                      A Professional Law Corporation

17                                    By ____/S/ Baruch C. Cohen_____
18                                    Baruch C. Cohen, Esq.
                                      *Attorney For Creditors Robert & Esther*
19                                    *Mermelstein*

20

21

22

23

24

25

26

27

28

-17-

## EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS

1.     A copy of these instructions must be attached to the copy of the complaint served upon each party, and the proof of service of the summons and complaint must indicate that such copy was served therewith.

2.     If the adversary proceeding involves money or property exceeding $10,000, or if plaintiff believes trial time will exceed 4 hours, plaintiff must serve, with the summons and complaint, a notice that compliance with Local Bankruptcy Rule 7026-1 and Federal Bankruptcy Procedure Rule 7026 is required. Plaintiff must also file a proof of service of the notice together with the proof of service of the summons and the complaint.

3.     If Local Bankruptcy Rule 7026-1 is applicable, counsel for the parties MUST TIMELY MEET TO DISCUSS SETTLEMENT AND TO EXCHANGE DOCUMENTS, OTHER EVIDENCE, AND LISTS OF WITNESSES, AND PRELIMINARY DISCOVERY SCHEDULES AS PROVIDED IN SAID RULE. FEDERAL RULE OF CIVIL PROCEDURE 26(D DOES NOT APPLY TO THIS PROCEEDING.

4.     Unless all defendants have defaulted, the parties **must** file a Joint Status Report pursuant to Local Bankruptcy Rule 7016-1(a)(2) at least 14 court days before the date of the status conference using Local Form No. F 7016-1.1. This form may be found on the Court's website, www.cacb.uscourts.gov, by clicking on "Forms/Rules/General Orders," then "Local Bankruptcy Rules & Forms." and scrolling down to F 7016-1.1. If Local Bankruptcy Rule 7026-1 is applicable, the parties shall include in the Joint Status Report a statement that they have met to discuss settlement and have exchanged documents, other evidence, lists of witnesses and preliminary discovery schedules.

5.     If no response to the complaint is timely filed, plaintiff may request entry of default by the clerk or by the court pursuant to Local Bankruptcy Rule 7055-1(a). Plaintiff may also request entry of a default judgment by filing and serving an appropriate motion pursuant to Local Bankruptcy Rule 7055-1(b). These motions may be brought pursuant to Local Bankruptcy Rule 9013-1.

6.     If the parties dispute whether the adversary proceeding is "core" or "non-core," they must file points and authorities in support of their positions. See 28 U.S.C. § 157. Any party that contends the proceeding is "non-core" must file and serve its points and authorities at least 14 days before the status conference. Any response must be filed and served at least 7 days before the status conference.

7.     Unless a party objects in writing in the first Joint Status Report or the court orders otherwise, direct testimony at trial will be presented by declaration.

8.     Failure to comply with these instructions may subject the responsible party to sanctions.

9.      At the initial status conference a date may be set for further status conference, a pre-trial conference and/or for trial.

10.     Failure of counsel for any party to appear at a status conference or pre-trial conference may be considered an abandonment and the adversary proceeding may be dismissed or judgment entered against the defaulting party, without further hearing.

Sandra R. Klein
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5) & EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___5/16/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen     bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
US Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___5/16/2023_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA PERSONAL DELIVERY:
   Honorable Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

VIA EMAIL:
   Michael Jay Berger     michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;
                          michael.berger@ecf.inforuptcy.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 5/16/2023 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                             **F 7004–1.SUMMONS.ADV.PROC**

1    **DECLARATION OF ROBERT MERMELSTEIN**

2    I, **ROBERT MERMELSTEIN**, declare and state as follows:

3    1.    The facts stated below are true and correct to the best of my personal knowledge and if called

4        upon to testify to them, I could and would competently do so.

5    2.    This Declaration is in support of the **PLAINTIFF'S MOTION FOR DEFAULT**

6        **JUDGMENT UNDER LBR 7055-1** filed by me, Robert Memelstein.

7    **PROCEDURAL HISTORY**

8    3.    On 5-12-2023, I filed this instant Complaint for Determination of Nondischargeability of

9        Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11

10        USC § 523(a)(6); & for Denial of Discharge Pursuant to 11 USC § 727(a)(2)(A); 11 USC §

11        727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)("Complaint")

12        against Defendant Leslie Klein ("Defendant"). (Dkt. No. 1) Adv. # 2:23-ap-01153-SK.

13    4.    On 11-8-2023, the Court dismissed without prejudice causes of action for Denial of Discharge

14        Pursuant to 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC §

15        727(a)(4); 11 USC § 727(a)(5) (Dkt No 36).

16    5.    On 11-28-2023, this Court entered a default against Klein for Determination of

17        Nondischargeability of Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11

18        USC § 523(a)(4), & 11 USC § 523(a)(6) (Dkt No 41).

19    **BACKGROUND FACTS SUPPORTING JUDGMENT**

20    **GARZA**

21    6.    On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

22        2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture

23        (the "Garza Memo"). The purpose of the Garza Memo, was to purchase a $1,000,000.00 life

24        insurance Policy ("Garza Policy"); American General on the life of Emanuel Garza ("Garza").

25        In furtherance of the Garza Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of

26        the Garza Policy. Defendant instructed Plaintiffs to make said payments to Defendant's

27        IOLTA - Attorney Client Trust Account. Per the Garza Memo, Defendant promised to pay the

28

Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

7.  On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Garza), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

8.  Plaintiffs are informed and believe that Defendant sold 50% to the Garza Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan without their consent.

9.  Plaintiffs are informed and believe that Garza apparently died in 2018, and on or about 7-2-2018, Defendant collected the Garza Proceeds, on the Garza Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Garza Proceeds for himself, and failed to pay Plaintiffs the $500,000.00 per the Garza Memo.

**TIMES SQUARE**

10. On 7-16-2012, Defendant issued Plaintiffs a Non-Recourse Promissory Note, in the amount of $333,333.00, due and payable by 7-16-2013, by Defendant on behalf of the Times Square Media Inc., containing a "*Heter Iska*" document (an approved way of restructuring a loan or debt so that it becomes an investment instead of a loan, per *Halacha* - Jewish law).

11. Plaintiffs are informed and believe that Defendant had no intention of paying the Times Square Non-Recourse Promissory Note, as Plaintiffs made no payments whatseoever.

**GANZ**

12. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with plaintiffs (the "Ganz Memo"). The purpose of the Ganz Memo, was to purchase a $1,000,000.00 life insurance Policy ("Ganz Policy"); American General on the life of Emanuel Ganz ("Ganz"). In furtherance of the Ganz Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of the Ganz Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Ganz Memo, Defendant promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

13.     On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Ganz), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

14.     Plaintiffs are informed and believe that Defendant apparently sold 50% to the Ganz Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without Plaintiff's consent.

15.     Plaintiffs are informed and believe that Ganz apparently died in 2018, and on or about 7-2-2018, Defendant collected the Ganz Proceeds, on the Ganz Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Ganz Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Ganz Memo.

**SPITZER**

16.     On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Spitzer Memo"). The purpose of the Spitzer Memo, was to make premium payments of a $5,000,000.00 life insurance Policy Number: US 0023546L ("Spitzer Policy"); American General on the life of Malvine Spitzer ("Spitzer"). In furtherance of the Spitzer Memo, Plaintiffs paid Defendant $250,000.00 towards the purchase of the Spitzer Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Spitzer Memo, Defendant promised to pay the Mermelstein Trust $2,250,000.00 ($2,000,000.00 plus $250,000.00 and all premiums paid of the proceeds).

17.     On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

18.     Plaintiffs are informed and believe that Defendant apparently sold portions of the Spitzer Policy, without their consent - but Plaintiffs do not know to whom. Defendant concealed this information from Plaintiffs.

///

**KOHN**

19.    On 3-10-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Kohn Memo"). The purpose of the Kohn Memo, was to make premium payments of a $3,000,000.00 life insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn ("Kohn"). In furtherance of the Kohn Memo, Plaintiffs paid Defendant $200,000.00 towards the purchase of the Kohn Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Kohn Memo, Defendant promised to pay the Mermelstein Trust $1,200,000.00 ($200,000.00 and $1,000,000.00 and all premiums paid of the proceeds).

20.    On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

21.    Plaintiffs are informed and believe that Defendant paid premiums of the Kohn Policy up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Kohn Policy - without Plaintiffs' consent - to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from 2011 onwards. Defendant concealed this information from Plaintiffs.

22.    According to information recently received by Plaintiffs an unsigned Amended and Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz agreed that upon the death of Kohn, Defendant and Rechnitz would be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz would split the profits 50/50 of the Kohn Policy, and that Plaintiffs would receive their $1,200,000.00.

**FRIEDMAN**

23.    On 3-1-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Friedman Memo"). The purpose of the Friedman Memo, was to purchase

a $1,500,000.00 life insurance Policy ("Friedman Policy"); American General on the life of Goldie Friedman ("Friedman"). In furtherance of the Friedman Memo, Plaintiffs paid Klein $250,000.00 towards the purchase of the Friedman Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Friedman Memo, Defendant promised to pay the Mermelstein Trust $1,000,000.00 ($250,000.00 and $750,000.00 and all premiums paid of the proceeds).

24. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Friedman), changing the recipient of the $1,000,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

25. Plaintiffs are informed and believe that Defendant apparently sold portions of the Friedman Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without Plaintiff's consent.

26. Plaintiffs are informed and believe that Friedman apparently died in 2020, and Defendant collected the Friedman Proceeds, on the Friedman Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Friedman Proceeds for himself, and failed to pay Plaintiffs the $1,000,000.00 per the Friedman Memo.

**ZIMMERMAN**

27. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Zimmerman Memo"). The purpose of the Zimmerman Memo, was to purchase a $9,000,000.00 life insurance Policy ("Zimmerman Policy"); American General Policy #US 0023738L on the life of Rozy Pearl Zimmerman ("Zimmerman"). In furtherance of the Zimmerman Memo, Plaintiffs paid Defendant $150,000.00 towards the purchase of the Zimmerman Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Zimmerman Memo, Defendant promised to pay the Mermelstein Trust $2,250,000.00.

28. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Zimmerman), changing the recipient of the $2,250,000.00 from the

1    Mermelstein Trust to Robert & Esther Mermelstein.

2  29.  Plaintiffs are informed and believe that Defendant paid premiums of the Zimmerman Policy

3    up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Zimmerman

4    Policy to Life Capital Group, LLC ("LCG") - without Plaintiffs' consent - where Shlomo

5    Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman Policy premiums from

6    2011 onwards. Defendant concealed this information from Plaintiffs.

7  30.  Defendant, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust (the

8    "Zimmerman Trust") issued three Non-Recourse Promissory Notes (the "Zimmerman Notes")

9    to Plaintiffs secured by the Zimmerman Policy in the amount of $2,357,679.50:

10    a.    Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June 15,

11        2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

12    b.    Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated December

13        7, 2009 - due December 7, 2019 (the: "$570,000.00 Zimmerman Note");

14    c.    Non-Recourse Promissory Notes # 3, principal sum of $375,000.00, dated January 14,

15        2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

16  31.  According to information recently received by Plaintiffs, an unsigned Amended and Restated

17    Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz

18    agreed that upon the death of Zimmerman, Defendant and Rechnitz would be reimbursed the

19    premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz

20    would split the profits 50/50 of the Zimmerman Policy, and that Plaintiffs would receive their

21    $2,250,000.00. Defendant concealed this information from Plaintiffs.

22  **PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT**

23  32.  The purpose of the Zimmerman Notes was to pay premiums on the 6 insurance policies

24    (Garza, Ganz, Spitzer, Kohn, Friedman, and Zimmeran). Defendant claimed he would use the

25    interest to pay the premiums.

26  33.  During this entire time, Defendant repeatedly assured Plaintiffs that their investments in the

27    6 policies were secure and accruing interest. Defendant mailed Plaintiffs periodic monthly

28    checks of $5,000.00 issued from Defendant's IOLTA - Attorney Client Trust Account.

1/10-2:04pm

## PLAINTIFFS' DISCOVERY OF DEFENDANT'S FRAUD

34.    On or about 1-21-2021, Plaintiffs discovered the above-referenced frauds and concealment.

35.    On or about 6-22-2022, Defendant wrote Plaintiffs assuring them that their investments were

"secure" when in reality, Defendant sold them off to third parties without Plaintiffs' consent:

I received you e mail and I disagree. I paid in on the Zmerman policy over $1,000,000.
The interest for the last 10 years is over $2,300,000 . I also own 25% of the profits.
***You are well secured***. You can call me if you have any questions. [Emphasis Added]

36.    On or about 7-18-2022, Defendant wrote Plaintiffs admitting that he used Plaintiffs' monies

from the Friedman Garza and Gans to pay for his legal fees in his lawsuit with Rechnitz.

I got your email. I want to make it very clear we are family and I don't want to fight.
I think I can make a deal with Rechnitz because I have the best lawyers in LA. If not
we will go to court. I have big leverage on Rechnitz due to the Menlo case. I am not
assigning the Zimmerman case to you. ***I am using the money from the Friedman
Garza and Gans cases for attorney fees in the Rechnitz case***. On Zimmerman
Rechnitz and I paid $4,000,000 in premiums but it is return of premium. We also gave
Mrs Zimmerman $200,000. I am sure they will sue to get more. It is a big policy and
all big policies have big fights. [Emphasis Added]

## PLAINTIFFS' PROOF OF CLAIMS

37.    Plaintiffs have filed seven (7) *Amended Proofs of Claim* against Defendant totaling

$20,997,706.72, primarily based on Defendant misappropriating insurance policies and the

proceeds, as follows:

| | | |
|---|---|---|
| a. | Claim # 19-1 (Garza) | $ 1,178,219.17 |
| b. | Claim # 20-1 (Times Square) | $   362,556.71 |
| c. | Claim # 21-1 (Ganz) | $ 1,178,219.17 |
| d. | Claim # 22-1 (Spitzer) | $ 2,928,219.17 |
| e. | Claim # 23-1 (Kohn) | $ 2,496,438.34 |
| f. | Claim # 24-1 (Friedman) | $ 2,296,438.34 |
| g. | Claim # 25-2 (Zimmerman) | <u>$10,557,615.81</u> |
| | **TOTAL:** | **$20,997,706.72** |

///

///

1

## **<u>DEFAULT INTEREST CALCULATION</u>**

2   38.     Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest on the claims has been calculated as

3           follows:

4           a.      *Garza:*

5                   Pre-petition interest of 10% on the $500,000.00 from 8-3-2009 until the petition date

6                   of 2-22-2023 equals $678,219.17 (4951 days at $136.99 interest/day). The total

7                   amount due as of the filing date was $1,178,219.17.

8                   Post-petition interest from 2-23-2023 through 1-4-2024 (320 days at $136.99

9                   interest/day) comes to $43,835.62.

10                  **<u>As of 1-9-2024, the total amount due on the Garza claim is $1,222,054.79.</u>**

11          b.      *Times Square*:

12                  Pre-petition interest of 10% on the $333,333.00 from 4-8-2022 until the petition date

13                  of 2-22-2023 equals $29,223.71 (320 days at $91.32 interest/day). The total amount

14                  due as of the filing date was $362,556.71.

15                  Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $91.32

16                  interest/day) comes to $29,223.71.

17                  **<u>As of 1-9-2024, the total amount due on the Time Square claim is $391,780.42.</u>**

18          c.      *Ganz:*

19                  Pre-petition interest of 10% on the $500,000.00 from 8-3-2009 until the petition date

20                  of 2-22-2023 equals $678,219.17 (4951 days at $136.99 interest/day). The total

21                  amount due as of the filing date was $1,178,219.17.

22                  Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $136.99

23                  interest/day) comes to $43,835.62.

24                  **<u>As of 1-9-2024, the total amount due on the Ganz claim is $1,222,054.79</u>**.

25          d.      *Spitzer:*

26                  Pre-petition interest of 10% on the $500,000.00 from 8-3-2009 until the petition date

27                  of 2-22-2023 equals $678,219.17 (4951 days at $136.99 interest/day). The total

28                  amount due as of the filing date was $2,928,219.17.

1/10-2:04pm

Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $136.99 interest/day) comes to $43,835.62.

**As of 1-9-2024, the total amount due on the Spitzer claim is $2,972,054.79.**

e.   *Kohn:*

Pre-petition interest of 10% on the $1,000,000.00 from 3-10-2010 until the petition date of 2-22-2023 equals $1,296,438.34 (4732 days at $273.97 interest/day). The total amount due as of the filing date was $2,496,438.34.

Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $273.97 interest/day) comes to $87,671.23.

**As of 1-9-2024, the total amount due on the Kohn claim is $2,584,109.58**.

f.   *Friedman*:

Pre-petition interest of 10% on the $1,000,000.00 from 3-10-2010 until the petition date of 2-22-2023 equals $1,296,438.34 (4732 days at $$273.97 interest/day). The total amount due as of the filing date was $2,296,438.34.

Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $273.97 interest/day) comes to $87,671.23.

**As of 1-9-2024, the total amount due on the Friedman claim is $2,384,109.58**.

g.   *Zimmerman*:

i.   Pre-petition interest of 10% on the *Zimmerman Memo* from 8-3-2009 until the petition date of 2-22-2023 equals $3,051,986.52 (4951 days at $616.44 interest/day). The total amount due as of the filing date was $5,301,986.52.

Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $616.44 interest/day) comes to $197,260.29.

**As of 1-9-2024, the total amount due on the Zimmerman Memo is $5,499,246.81.**

ii.   Pre-petition interest of 10% on the *$1,412,679.53 Zimmerman Note* from 6-15-2011 until the petition date of 2-22-2023 equals $1,652,641.59 (4270 days at $387.04 interest/day). The total amount due as of the filing date was

1/10-2:04pm

1    $3,065,321.12.

2    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $387.04

3    interest/day) comes to $123,851.36.

4    **As of 1-9-2024, the total amount due on the $1,412,679.53 Zimmerman**

5    **Note is $3,189,172.48.**

6    iii.    Pre-petition interest of 10% on the *$570,000.00 Zimmerman Note* from

7    12-7-2009 until the petition date of 2-22-2023 comes to $753,493.23 (4825

8    days at $156.16 interest/day). The total amount due as of the filing date was

9    $1,323,493.23.

10    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $156.16

11    interest/day) comes to $49,972.61.

12    **As of 1-9-2024, the total amount due on the $570,000.00 Zimmerman Note**

13    **is $1,373,465.84.**

14    iv.    Pre-petition interest of 10% on the on the *$375,000.00 Zimmerman Note* from

15    1-14-2010 until the petition date of 2-22-2023 comes to $491,814.94 (4787

16    days at $102.74 interest/day). The total amount due as of the filing date was

17    $866,814.94.

18    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $102.74

19    interest/day) comes to $32,876.70.

20    **As of 1-9-2024, the total amount due on the $375,000.00 Zimmerman Note**

21    **is $899,691.65.**

22    The total amount due on the Zimmerman claim is $10,961,576.77.

23    39.    The combined the total default amount due for all claims is $21,737,740.70.

24    I declare under penalty of perjury under the laws of the United States, State of California that

25    the foregoing is true and correct.

26    Executed January 10, 2024, at Los Angeles, CA

27    By /s/ Robert Mermelstein
       ROBERT MERMELSTEIN

28

1/10-2:04pm

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| 1. Who is the current creditor? | **ROBERT & ESTHER MERMELSTEIN**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>BARUCH C. COHEN, ESQ.<br>Name<br><br>4929 WILSHIRE BOULEVARD, SUITE 940<br>Number          Street<br><br>LOS ANGELES          CA          90010<br>City                    State          ZIP Code<br><br>Contact phone  323-937-4501<br><br>Contact email  baruchcohen@baruchcohenesq.com | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number          Street<br><br>City                    State          ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes. Claim number on court claims registry (if known) 19          Filed on 05/02/2023<br>                                                                                              MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __G__ __A__ __R__ __Z__

**7. How much is the claim?**   $_____ 1,178,219.17 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                    $_____

Amount of the claim that is secured:       $_____

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:      $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**      $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/10/2024
    MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Baruch C. Cohen | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number        Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email | baruchcohen@baruchcohenesq.com |

**DECLARATION OF ROBERT MERMELSTEIN**

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1.  The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.  This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3.  My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4.  On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Garza Memo").[1]

5.  The purpose of the Garza Memo, was to purchase a $1,000,000.00 Life Insurance Policy ("Garza Policy"); American General on the life of Emanuel Garza ("Garza").

6.  In furtherance of the Garza Memo, I paid Klein $100,000.00 towards the purchase of the Garza Policy.

7.  Per the Garza Memo, Klein promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

8.  On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Garza), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9.  Klein apparently sold 50% to the Garza Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan.

10. Garza apparently died in 2018, and on or about 7-2-2018, Klein collected the Garza Proceeds,

---

[1]A true and correct copy of the Garza Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the First Amendment to the Garza Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1/10-11:28am

1    on the <u>Garza Policy</u>. Klein concealed this information from me, misappropriated & kept the

2    <u>Garza Proceeds</u> for himself, and failed to pay me the  $500,00.00 per the <u>Garza Memo</u>.

3    **INTEREST CALCULATION**

4    11.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $500,000.00 from

5    8-3-2009 until the petition date of 2-22-2023 comes to $678,219.17 (4951 days at $136.99

6    interest/day). The total amount due as of the filing date was $1,178,219.17.

7

8    I declare under penalty of perjury under the laws of the United States, States of California and

9    of New York that the foregoing is true and correct.

10    Executed January 10, 2024, at Brooklyn, New York

11              By   /s/ Robert Mermelstein

12              ROBERT MERMELSTEIN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Garza

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|-----------|--------------|----------|-----------|---------|-----------|
| $500,000.00 | 8/3/2009 | $136.99 | 4951 | $678,219.17 | $1,178,219.17 |

**EXHIBIT "1"**

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:       **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:       **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I.  INTRODUCTION

Section 1.1
The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General Policy Number: US 0016752L on the life of **MARJORIE GARZA.**

We have reached an agreement on the essential elements of the joint venture.  This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II.  PURPOSE OF JOINT VENTURE

Section 2.1
The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III.  DUTIES AND OBLIGATIONS

Section 3.1
Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force.  In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV.  CAPITAL CONTRIBUTIONS

Page 1 of 4

Section 4.1

    <u>Capital Contributions</u>: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

    <u>Management by Committee</u>: The joint venture shall be managed by Leslie Klein. Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

    Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

    <u>Distribution of Profits</u>: Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009 shall receive $400,000 plus return of premiums paid; plus $100,000 paid**
**The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

    <u>Term and Termination</u>: This Agreement shall expire upon the death of **MARJORIE GARZA.**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

    <u>Definitions</u>: For the purpose of this Agreement, "Proprietary Information" shall include all information designated by any joint venturer, either orally or in writing, as confidential or proprietary, or that reasonably would be considered proprietary or confidential to the business contemplated by this Agreement.

Page 2 of 4

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date: The effective date of this Agreement shall be August 3, 2009

### *SIGNATURES APPEAR ON THE FOLLOWING PAGE*

Page 3 of 4

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

DATED: ___8/3/09___        By: _____
                                  LESLIE KLEIN - Trustee


DATED: ___6/3/09___        **THE KLEIN CHARITABLE REMAINDER UNITRUST dated 2-20-1996**

                           By: _____
                                  KENNETH KLEIN, Trustee
                                       Joint Venturer

**EXHIBIT "2"**

# FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:        **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:        **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

life insurance Policy: American General Policy Number: US 0016752L on the life of
**MARJORIE GARZA.**

I, **LESLIE KLEIN**, state as follows:

That I transfer the interest of **THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: _____

_____
**LESLIE KLEIN**
                        **Trustee of**
**The Mermelstein Charitable Remainder Unitrust**
**Dated July 27, 2009**

Page 1 of 1

| Fill in this information to identify the case: |
|---|
| Debtor 1    LESLIE KLEIN |
| Debtor 2 <br> (Spouse, if filing) |
| United States Bankruptcy Court for the:   Central District of California |
| Case number   2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | ROBERT & ESTHER MERMELSTEIN | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes.  From whom? | |
| 3. **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> BARUCH C. COHEN, ESQ. <br> Name <br><br> 4929 WILSHIRE BOULEVARD, SUITE 940 <br> Number   Street <br><br> LOS ANGELES    CA    90010 <br> City     State     ZIP Code <br><br> Contact phone   323-937-4501 <br><br> Contact email   baruchcohen@baruchcohenesq.com | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br> Number   Street <br><br> City     State     ZIP Code <br><br> Contact phone <br><br> Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br><br> __ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |
| 4. **Does this claim amend one already filed?** | ☐ No <br> ☑ Yes.  Claim number on court claims registry (if known) 20 | Filed on 05/02/2023 <br> MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes.  Who made the earlier filing? | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  T  I  M  E

**7. How much is the claim?**   $_____ 362,556.71  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                        $_____

**Amount of the claim that is secured:**       $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/10/2024
                   MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | |
|---|---|---|
| Name | Baruch C. Cohen | |
| | First name        Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | |
| | Number        Street | |
| | LOS ANGELES | CA        90010 |
| | City | State      ZIP Code |
| Contact phone | 323-937-4501 | Email baruchcohen@baruchcohenesq.com |

### DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1.  The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.  This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3.  A true and correct copy of the 7-16-2012 Non-Recourse Promissory Note, in the amount of $333,333.00, due and payable by 7-16-2013, by Leslie Klein ("<u>Klein</u>") on behalf of the Times Square Media Inc., containing a "*Heter Iska*" document (an approved way of restructuring a loan or debt so that it becomes an investment instead of a loan, per *Halacha* - Jewish law).

### <u>INTEREST CALCULATION</u>

4.  Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $333,333.00 from 4-8-2022 until the petition date of 2-22-2023 comes to $29,223.71 (320 days at $91.32 interest/day). The total amount due as of the filing date was $362,556.71.

I declare under penalty of perjury under the laws of the United States, States of California and of New York that the foregoing is true and correct.

Executed January 10, 2024, at Brooklyn, New York

By    /s/ Robert Mermelstein
ROBERT MERMELSTEIN

1/10-11:29am

## Times

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|-----------|--------------|----------|-----------|---------|-----------|
| $333,333.00 | 4/8/2022 | $91.32 | 320 | $29,223.71 | $362,556.71 |

**EXHIBIT "1"**

## NON-RECOURSE PROMISSORY NOTE

| | | |
|---|---|---|
| **Principal Sum:** | **$333,333.00** | **July 16, 2012** |
| **Due Date:** | **July 16, 2013** | **State of California** |

**FOR VALUE RECEIVED,** the undersigned, **LESLIE KLEIN** as Trustee of **THE TIMES SQUARE MEDIA INC.** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ESTI and ROBERT MERMELSTEIN** or his registered assigns (the "Holder"), the principal sum of **$333,333.00**, plus interest of **12%** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**"Policy"** means any of, and **"Policies"** means all of, the life insurance policies listed on the attached Schedule "A".

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 12 % percent per annum.

**Payment.** The entire principal balance hereof, together with all interest accrued thereon, shall be due and payable on **July 16, 2013**, or at such time, if earlier, as the Holder has accelerated the maturity of the Note after the occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

**Events of Default.**

Each of the following events also shall constitute an "Event of Default":

    (i)    Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due. notwithstanding payment of such amounts by Holder; and

    (ii)    Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

    Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion, may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note, together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holder, and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things, the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders' security interests in the Policy or Policies, the proceeds thereof. If any proceedings shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies. The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies, the proceeds thereof. Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its obligations under this Note shall not discharge, excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other

agreement contemplated thereby.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by the Holder or the Holder's attorney duly authorized, in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is

Page 3 of 4

obtained as a direct or indirect result of any action on or under this Note.

**THE TIMES SQUARE MEDIA INC.**

By: _____ _____

        **LESLIE KLEIN**

           Name                        Title

| | |
|---|---|
| **STATE OF CALIFORNIA** | ) |
| | )   ss |
| **COUNTY OF LOS ANGELES** | ) |

       On July 16, 2012 before me, **KENNETH KLEIN** a Notary Public in and for said County and State, personally appeared **LESLIE KLEIN**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature: _____

**NOTARY PUBLIC IN AND FOR SAID COUNTY**

                                          [ SEAL ]



KENNETH K. KLEIN
Comm. # 1966495
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb 3, 2016

Page 4 of 4

07/25/2012 12:41 8185012959 LES KLEIN AND ASSOC PAGE 06/07

### Heter Iskoh

I, the undersigned, **LESLIE KLEIN** as Trustee of **THE TIMES SQUARE MEDIA INC.** hereby acknowledge the receipt of **$333,333.00** from **ESTI and ROBERT MERMELSTEIN** with which to do business for a term of **one (1) year** from the date recorded below ("term"), and I obligate myself to purchase with the aforementioned sum such merchandise or goods of any kind as may seem likely to profit therefrom.

This money shall take precedence over my own money. As regards all the profit that Hashem may grant me in connection with this merchandise, half thereof shall belong to me, and the other half to **ESTI and ROBERT MERMELSTEIN.**

Both parties shall also equally share the losses, G-d forbid. At the expiration of the term, I obligate myself to return promptly to **ESTI and ROBERT MERMELSTEIN** the principle and one-half of the profit. My word shall not be accepted as true unless it is substantiated by two trustworthy witnesses, and as regards the profits, I shall only be trusted by taking an oath.

It is moreover agreed that if I desire to give **12%** of the principle, in lieu of his share of the profit, he relinquishes his rights of verification by oath, and the balance of the profit, if any, shall belong to me alone, even if his share of the profits far exceeded the aforementioned rate.

All the stipulations relating to the credibility of my statements shall remain in effect after the expiration of the term as long as I do not return the aforementioned principle amount. I acknowledge that I received consideration of one dollar for my labor.

Though loan papers have been drawn on this transaction which indicate interest payments, this document clarifies that in fact it is for return on investment or payment to

Page 1 of 2

release from an oath regarding verification of profit. It has been written in the form of a
loan to expedite its execution.


**Dated:** July 16, 2012

THE TIMES SQUARE MEDIA INC.

By:

LESLIE KLEIN

_____
(Witness)

Mary Ann Newman
_____
(Witness)

Page 2 of 2

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

ROBERT & ESTHER MERMELSTEIN
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

BARUCH C. COHEN, ESQ.
Name

4929 WILSHIRE BOULEVARD, SUITE 940
Number     Street

LOS ANGELES          CA          90010
City                State        ZIP Code

Contact phone  323-937-4501

Contact email  baruchcohen@baruchcohenesq.com

Where should payments to the creditor be sent? (if different)

Name

Number     Street

City          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes.  Claim number on court claims registry (if known) 21

Filed on  05/02/2023
          MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __G__ __A__ __N__ __Z__

**7. How much is the claim?** $_____ 1,178,219.17 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/10/2024
                   MM  /  DD  /  YYYY

/s/ Baruch C. Cohen, Esq.
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Baruch C. Cohen
            First name          Middle name          Last name

Title       ATTORNEY FOR DAVID BERGER

Company     LAW OFFICE OF BARUCH C. COHEN, APLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     4929 WILSHIRE BOULEVARD, SUITE 940
            Number        Street

            LOS ANGELES                    CA        90010
            City                           State     ZIP Code

Contact phone   323-937-4501              Email  baruchcohen@baruchcohenesq.com

# DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the "Mermelstein Trust").

4. On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Ganz Memo").[1]

5. The purpose of the Ganz Memo, was to purchase a $1,000,000.00 Life Insurance Policy ("Ganz Policy"); American General on the life of Emanuel Ganz ("Ganz").

6. In furtherance of the Ganz Memo, I paid Klein $100,000.00 towards the purchase of the Ganz Policy.

7. Per the Ganz Memo, Klein promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

8. On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Ganz), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein apparently sold 50% to the Ganz Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan.

10. Ganz apparently died in 2018, and on or about 7-2-2018, Klein collected the Ganz Proceeds,

---

[1] A true and correct copy of the Ganz Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2] A true and correct copy of the First Amendment to the Ganz Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1     on the <u>Ganz Policy</u>. Klein concealed this information from me, misappropriated & kept the

2     <u>Ganz Proceeds</u> for himself, and failed to pay me the $500,00.00 per the <u>Ganz Memo</u>.

3     **INTEREST CALCULATION**

4    11.     Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $500,000.00 from

5     8-3-2009 until the petition date of 2-22-2023 comes to $678,219.17 (4951 days at $136.99

6     interest/day). The total amount due as of the filing date was $1,178,219.17.

7

8     I declare under penalty of perjury under the laws of the United States, States of California and

9 of New York that the foregoing is true and correct.

10     Executed January 10, 2024, at Brooklyn, New York

11                    By     */s/ Robert Mermelstein*

12                    ROBERT MERMELSTEIN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Ganz

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|-----------|--------------|----------|-----------|---------|-----------|
| $500,000.00 | 8/3/2009 | $136.99 | 4951 | $678,219.17 | $1,178,219.17 |

**EXHIBIT "1"**

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer: **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer: **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General on the life of **EMANUEL GANZ.**

We have reached an agreement on the essential elements of the joint venture. This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV. CAPITAL CONTRIBUTIONS

Page 1 of 4

Section 4.1

    <u>Capital Contributions</u>: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

    <u>Management by Committee</u>: The joint venture shall be managed by Leslie Klein. Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

    Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

    <u>Distribution of Profits</u>: Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009 shall receive $400,000 plus return of premiums paid; plus $100,000 paid**
**The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

    <u>Term and Termination</u>: This Agreement shall expire upon the death of **EMANUEL GANZ.**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

    <u>Definitions</u>: For the purpose of this Agreement, "Proprietary Information" shall include all information designated by any joint venturer, either orally or in writing, as confidential or proprietary, or that reasonably would be considered proprietary or confidential to the business contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date: The effective date of this Agreement shall be August 3, 2009

### SIGNATURES APPEAR ON THE FOLLOWING PAGE

Page 3 of 4

**THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27,
2009**

DATED: _8/3/09_

By: _____

LESLIE KLEIN - Trustee

Joint Venturers

DATED: _8/3/09_

**THE KLEIN CHARITABLE REMAINDER
UNITRUST dated 2-20-1996**

By: _____

KENNETH KLEIN, Trustee

Joint Venturer

Page 4 of 4

**EXHIBIT "2"**

## FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:     **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:     **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General on the life of **EMANUEL GANZ.**

I, **LESLIE KLEIN**, state as follows:

That I transfer the interest of **THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009** to **ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: ___4/30/2021___

_____
LESLIE KLEIN
                    **Trustee of
The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

ROBERT & ESTHER MERMELSTEIN
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

BARUCH C. COHEN, ESQ.
Name

4929 WILSHIRE BOULEVARD, SUITE 940
Number        Street

LOS ANGELES        CA        90010
City                State            ZIP Code

Contact phone  323-937-4501

Contact email  baruchcohen@baruchcohenesq.com

Where should payments to the creditor be sent? (if different)

_____
Name

_____
Number        Street

_____
City                State            ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☐ No
☑ Yes.  Claim number on court claims registry (if known) 22        Filed on 05/02/2023
                                                                      MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|-------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  S  P  I  T

**7. How much is the claim?** $_____2,928,219.17_____ . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/10/2024
                  MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
Signature

**Print the name of the person who is completing and signing this claim:**

| | | |
|---|---|---|
| Name | Baruch C. Cohen | |
| | First name        Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | |
| | Number        Street | |
| | LOS ANGELES | CA        90010 |
| | City | State        ZIP Code |
| Contact phone | 323-937-4501 | Email baruchcohen@baruchcohenesq.com |

### DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4. On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Spitzer Memo").[1]

5. The purpose of the Spitzer Memo, was to purchase a $5,000,000.00 Life Insurance Policy Number: US 0023546L ("Spitzer Policy"); American General on the life of Malvine Spitzer ("Spitzer").

6. In furtherance of the Spitzer Memo, I paid Klein $250,000.00 towards the purchase of the Spitzer Policy.

7. Per the Spitzer Memo, Klein promised to pay the Mermelstein Trust $2,250,000.00 ($2,000,000 plus $250,000 and all premiums paid of the proceeds).

8. On 4-30-2021, Klein executed a First Amendment to the  Memorandum of Agreement for Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein apparently sold portions of the Spitzer Policy, but I do not know to whom. Klein concealed this information from me.

---

[1]A true and correct copy of the Spitzer Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the First Amendment to the Spitzer Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1/10-11:28am

10.     Spitzer is still alive. Because of Klein deceptions concealments, I am filing this Proof of Claim against his estate - in the event of Spitzer's death, as to my entitlement.

### **INTEREST CALCULATION**

11.     Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $500,000.00 from 8-3-2009 until the petition date of 2-22-2023 comes to $678,219.17 (4951 days at $136.99 interest/day). The total amount due as of the filing date was $2,928,219.17.

I declare under penalty of perjury under the laws of the United States, States of California and of New York that the foregoing is true and correct.

Executed January 10, 2024, at Brooklyn, New York

By    /s/ Robert Mermelstein

ROBERT MERMELSTEIN

**Spitzer**

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $2,250,000.00 | 8/3/2009 | $136.99 | 4951 | $678,219.17 | $2,928,219.17 |

**EXHIBIT "1"**

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:      **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer:      **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I.  INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General Policy Number: US 0023546L. on the life of **MALVINE SPITZER.**

We have reached an agreement on the essential elements of the joint venture.  This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II.  PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III.  DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force.  In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV.  CAPITAL CONTRIBUTIONS

Page 1 of 5

Section 4.1

    <u>Capital Contributions</u>: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

    <u>Management by Committee</u>: The joint venture shall be managed by Leslie Klein. Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

    Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

    <u>Distribution of Profits</u>: Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
shall receive $2,000,000 plus return of premiums paid; plus $250,000 paid
The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

    <u>Term and Termination</u>: This Agreement shall expire upon the death of **MALVINE SPITZER.**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

    <u>Definitions</u>: For the purpose of this Agreement, "Proprietary Information" shall include all information designated by any joint venturer, either orally or in writing, as confidential or proprietary, or that reasonably would be considered proprietary or confidential to the business contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

### XIII. EFFECTIVE DATE AND TERM

Section 13.1

<u>Effective Date</u>: The effective date of this Agreement shall be August 3, 2009

*SIGNATURES APPEAR ON THE FOLLOWING PAGE*

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

DATED: _____8/3/09_____          By: _____ VO

                                        LESLIE KLEIN - Trustee

DATED: _____8/3/09_____          **THE KLEIN CHARITABLE REMAINDER UNITRUST dated 2-20-1996**

                                      By: _____

                                      KENNETH KLEIN, Trustee
                                          Joint Venturer

**EXHIBIT "2"**

# FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer: **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer: **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General Policy Number: US 0023546L. on the life of
**MALVINE SPITZER.**

**I, LESLIE KLEIN, state as follows:**

**That I transfer the interest of THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

**Dated:** _____4/30/2021_____

_____
**LESLIE KLEIN**
                                **Trustee of**
**The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. Who is the current creditor? | ROBERT & ESTHER MERMELSTEIN | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>BARUCH C. COHEN, ESQ.<br>Name<br><br>4929 WILSHIRE BOULEVARD, SUITE 940<br>Number        Street<br>LOS ANGELES         CA         90010<br>City                State        ZIP Code<br><br>Contact phone  323-937-4501<br><br>Contact email  baruchcohen@baruchcohenesq.com | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number        Street<br><br>City                State        ZIP Code<br><br>Contact phone<br><br>Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 23 | Filed on  05/02/2023<br>MM  / DD  / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  K  O  H  N

**7. How much is the claim?**   $_____2,496,438.34_. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:              $_____

Amount of the claim that is secured:      $_____

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:      $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**      $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410                     **Proof of Claim**                     page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/10/2024
                  MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Baruch C. Cohen | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number        Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email | baruchcohen@baruchcohenesq.com |

## DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4. On 3-10-2010, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Kohn Memo").[1]

5. The purpose of the Kohn Memo, was to purchase a $3,000,000.00 Life Insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn  ("Kohn").

6. In furtherance of the Kohn Memo, I paid Klein $200,000.00 towards the purchase of the Kohn Policy.

7. Per the Kohn Memo, Klein promised to pay the Mermelstein Trust $1,200,000.00 ($200,000 and $1,000,000 and all premiums paid of the proceeds).

8. On 4-30-2021, Klein executed a First Amendment to the  Memorandum of Agreement for Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein paid premiums of the Kohn Policy up to 2011. Thereafter, Klein apparently sold portions or the entirety of the Kohn Policy to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from

---

[1]A true and correct copy of the Kohn Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the First Amendment to the Kohn Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1/10-11:28am

1      2011 onwards. Klein concealed this information from me.

2   10.     According to information recently received by me, an unsigned Amended and Restated

3        Limited Liability Company Agreement of Life Capital Group, LLC,[3] Klein and Rechnitz

4        agreed that upon the death of Kohn, Klein and Rechnitz would be reimbursed the premiums

5        that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would split the

6        profits 50/50 of the <u>Kohn Policy</u>, and that I would receive my $1,200,000.00.

7   11.     As far as I know, Kohn is still alive. Because of Klein's deceptions and concealments, I am

8        filing this Proof of Claim against his estate - in the event of Kohn's death, as to my

9        entitlement.

10                     **<u>INTEREST CALCULATION</u>**

11   12.     Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $1,000,000.00 from

12        3-10-2010 until the petition date of 2-22-2023 comes to $1,296,438.34 (4732 days at $$273.97

13        interest/day). The total amount due as of the filing date was $2,496,438.34.

14

15      I declare under penalty of perjury under the laws of the United States, States of California and

16 of New York that the foregoing is true and correct.

17      Executed January 10, 2024, at Brooklyn, New York

18                            By    /S/ Robert Mermelstein
                               ROBERT MERMELSTEIN

19

20

21

22

23

24

25

26

---

[3] A true and correct copy of the Amended and Restated Limited Liability Company Agreement
of Life Capital Group, LLC is attached hereto as Exhibit "3" and is incorporated herein by this
reference.

1/10-11:28am

## Kohn

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $1,200,000.00 | 3/10/2010 | $273.97 | 4732 | $1,296,438.34 | $2,496,438.34 |

**EXHIBIT "1"**

## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer: **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer: **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General on the life of **EUGENE KOHN .**

We have reached an agreement on the essential elements of the joint venture. This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV. CAPITAL CONTRIBUTIONS

Page 1 of 4

Section 4.1

Capital Contributions: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

Management by Committee: The joint venture shall be managed by Leslie Klein. Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

Distribution of Profits: Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009 shall receive $200,000 and $1,000,000 and all premiums paid of the proceeds.**

**The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

Term and Termination: This Agreement shall expire upon the death of **EUGENE KOHN**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

Definitions: For the purpose of this Agreement, "Proprietary Information" shall include all information designated by any joint venturer, either orally or in writing, as confidential or proprietary, or that reasonably would be considered proprietary or confidential to the business contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date: The effective date of this Agreement shall be March 1, 2010

### *SIGNATURES APPEAR ON THE FOLLOWING PAGE*

Page 3 of 4

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

DATED: 3/12/2010

By: _____
LESLIE KLEIN  - Trustee

Joint Venturers

DATED: 3/12/01.

**THE KLEIN CHARITABLE REMAINDER UNITRUST dated 2-20-1996**

By: _____
KENNETH KLEIN, Trustee
Joint Venturer

Page 4 of 4

**EXHIBIT "2"**

## FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:    **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:    **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General on the life of **EUGENE KOHN**

I, **LESLIE KLEIN**, state as follows:

That I transfer the interest of **THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: ___4/30/2021___

_____
**LESLIE KLEIN**
                    **Trustee of**
**The Mermelstein Charitable Remainder Unitrust**
**Dated July 27, 2009**

Page 1 of 1

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | Who is the current creditor? | ROBERT & ESTHER MERMELSTEIN<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |

| | | | |
|---|---|---|---|
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>BARUCH C. COHEN, ESQ.<br>Name<br><br>4929 WILSHIRE BOULEVARD, SUITE 940<br>Number          Street<br><br>LOS ANGELES          CA          90010<br>City          State          ZIP Code<br><br>Contact phone  323-937-4501<br><br>Contact email  baruchcohen@baruchcohenesq.com | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number          Street<br><br>City          State          ZIP Code<br><br>Contact phone<br><br>Contact email |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 24          Filed on 05/02/2023<br>                                                                                    MM  / DD  / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6.** **Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  F  R  I  E

---

**7.** **How much is the claim?**   $_____2,296,438.34   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

---

**9.** **Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10.** **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

---

**11.** **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.    $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/10/2024
                     MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Baruch C. Cohen | | |
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number        Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email | baruchcohen@baruchcohenesq.com |

# DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1.  The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.  This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3.  My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4.  On 3-1-2010, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Friedman Memo").[1]

5.  The purpose of the Friedman Memo, was to purchase a $1,500,000.00 Life Insurance Policy ("Friedman Policy"); American General on the life of Goldie Friedman ("Friedman").

6.  In furtherance of the Friedman Memo, I paid Klein $250,000.00 towards the purchase of the Friedman Policy.

7.  Per the Friedman Memo, Klein promised to pay the Mermelstein Trust $1,000,000.00 ($250,000.00 and $750,000.00 and all premiums paid of the proceeds).

8.  On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Friedman), changing the recipient of the $1,000,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9.  Klein apparently sold portions of the Friedman Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan.

10. Friedman apparently died in 2020, and Klein collected the Friedman Proceeds, on the

---

[1]A true and correct copy of the Friedman Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the First Amendment to the Friedman Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1    Friedman Policy. Klein concealed this information from me, misappropriated & kept the

2    Friedman Proceeds for himself, and failed to pay me the $1,000,000.00 per the Friedman

3    Memo.

4                              **INTEREST CALCULATION**

5    11.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $1,000,000.00 from

6    3-10-2010 until the petition date of 2-22-2023 comes to $1,296,438.34 (4732 days at $$273.97

7    interest/day). The total amount due as of the filing date was $2,296,438.34.

8

9          I declare under penalty of perjury under the laws of the United States, States of California and

10   of New York that the foregoing is true and correct.

11         Executed January 10, 2024, at Brooklyn, New York

12                                          By ___/S/ Robert Mermelstein_____
                                            ROBERT MERMELSTEIN
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1/10-11:29am

**Friedman**

| Principle | Default Date | Petition Date | Per diem | # of Days | @10% Int | Total POC |
|---|---|---|---|---|---|---|
| $1,000,000.00 | 3/10/2010 | 3/10/2010 | $273.97 | 4732 | $1,296,438.34 | $2,296,438.34 |

**EXHIBIT "1"**

## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:     **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer:     **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I.  INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General on the life of **GOLDIE FRIEDMAN.**

We have reached an agreement on the essential elements of the joint venture.  This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II.  PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III.  DUTIES AND OBLIGATIONS

Section 3.1

<u>Duties of the Parties</u>: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force.  In the event one of the joint venturers fail to make said payment, the other joint·venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV.  CAPITAL CONTRIBUTIONS

Section 4.1

    <u>Capital Contributions</u>:  Each of us has contributed the necessary capital contribution.

## ARTICLE V.  MANAGEMENT STRUCTURE

Section 5.1

    <u>Management by Committee</u>:  The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI.  ASSIGNMENT

Section 6.1

    Each party shall have the right to assign his interest.

## ARTICLE VII.  DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

    <u>Distribution of Profits</u>:  Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
shall receive $250,000.00 and $750,000.00 and all premiums paid of the proceeds.**

**The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII.  TERM

Section 8.1

    <u>Term and Termination</u>:  This Agreement shall expire upon the death of **GOLDIE
FRIEDMAN.**

## ARTICLE IX.  CONFIDENTIALITY

Section 9.1

    <u>Definitions</u>:  For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.

## X.  TRANSFERS

Section 10.1

    Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI.  ARBITRATION

Section 11.1

    The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII.  INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

    If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII.  EFFECTIVE DATE AND TERM

Section 13.1

    <u>Effective Date</u>:  The effective date of this Agreement shall be March 1, 2010

### *SIGNATURES APPEAR ON THE FOLLOWING PAGE*

**THE MERMELSTEIN CHARITABLE**
**REMAINDER UNITRUST DATED July 27,**
**2009**

DATED: _3/1/ 6/10_

By: _____

       **LESLIE KLEIN  - Trustee**

           Joint Venturers

DATED: _3/1/ 6/10_     **THE KLEIN CHARITABLE REMAINDER**
**UNITRUST dated 2-20-1996**

By: _____

     **KENNETH KLEIN, Trustee**
        Joint Venturer

Page 4 of  4

**EXHIBIT "2"**

## FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:    **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:    **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General on the life of **GOLDIE FRIEDMAN.**

I, **LESLIE KLEIN,** state as follows:

That I transfer the interest of **THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: _____9/3J/wu_____

_____
**LESLIE KLEIN**
                    **Trustee of**
**The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

| | | |
|---|---|---|
| 1. Who is the current creditor? | ROBERT & ESTHER MERMELSTEIN | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>BARUCH C. COHEN, ESQ.<br>Name<br>4929 WILSHIRE BOULEVARD, SUITE 940<br>Number          Street<br>LOS ANGELES          CA          90010<br>City                State          ZIP Code<br><br>Contact phone   323-937-4501<br>Contact email   baruchcohen@baruchcohenesq.com | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br>Number          Street<br>City          State          ZIP Code<br><br>Contact phone<br>Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes.   Claim number on court claims registry (if known) 25 | Filed on   05/03/2023<br>        MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.   Who made the earlier filing? | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __Z__ __I__ __M__ __M__

**7. How much is the claim?**   $_____10,557,615.81__ . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**   $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/10/2024
            MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Baruch C. Cohen
            First name        Middle name        Last name

Title       ATTORNEY FOR DAVID BERGER

Company     LAW OFFICE OF BARUCH C. COHEN, APLC
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     4929 WILSHIRE BOULEVARD, SUITE 940
            Number        Street
            LOS ANGELES                    CA        90010
            City                           State     ZIP Code

Contact phone   323-937-4501              Email baruchcohen@baruchcohenesq.com

### DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1.   The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.   This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3.   My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4.   On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Zimmerman Memo").[1]

5.   The purpose of the Zimmerman Memo, was to purchase a $9,000,000.00 Life Insurance Policy ("Zimmerman Policy"); American General Policy # US 0023738L on the life of Rozy Pearl Zimmerman ("Zimmerman").

6.   In furtherance of the Zimmerman Memo, I paid Klein $150,000.00 towards the purchase of the Zimmerman Policy.

7.   Per the Zimmerman Memo, Klein promised to pay the Mermelstein Trust $2,250,000.00.

8.   On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Zimmerman), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9.   Klein paid premiums of the Zimmerman Policy up to 2011. Thereafter, Klein apparently sold portions or the entirety of the Zimmerman Policy to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman Policy

---

[1]A true and correct copy of the Zimmerman Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2] A true and correct copy of the First Amendment to the Zimmerman Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1    premiums from 2011 onwards. Klein concealed this information from me.

2    10.    Klein, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust (the

3           "Zimmerman Trust") issued three Non-Recourse Promissory Notes (the "Zimmerman Notes")

4           to me and my wife, secured by the Zimmerman Policy[3] in the amount of $2,357,679.50:

5           a.    Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June 15,

6                 2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

7           b.    Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated December

                  7, 2009 - due December 7, 2019 (the: "$570,000.00 Zimmerman Note");

8           c.    Non-Recourse Promissory Notes # 2, principal sum of $375,000.00, dated January 14,

9                 2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

10   11.    According to information recently received by me, an unsigned Amended and Restated

11          Limited Liability Company Agreement of Life Capital Group, LLC,[4] Klein and Rechnitz

12          agreed that upon the death of Zimmerman, Klein and Rechnitz would be reimbursed the

13          premiums that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would

14          split the profits 50/50 of the Zimmerman Policy, and that I would receive my $2,250,000.00.

15   12.    It is my understanding that Zimmerman is still alive. Because of Klein's deceptions and

16          concealment, I am filing this Proof of Claim against his estate - in the event of Zimmerman's

17          death, as to my entitlement.

18                                        **INTEREST CALCULATION**

19   13.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *Zimmerman Memo* from

20          8-3-2009 until the petition date of 2-22-2023 equals $3,051,986.52 (4951 days at $616.44

21          interest/day). The total amount due as of the filing date was $5,301,986.52.

22   14.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *$1,412,679.53 Zimmerman*

23

24          [3] True and correct copies of the 3 the Zimmerman Notes are attached hereto as Exhibit "3" and

25   is incorporated herein by this reference.

26          [4] A true and correct copy of the Amended and Restated Limited Liability Company Agreement

27   of Life Capital Group, LLC is attached hereto as Exhibit "4" and is incorporated herein by this

     reference.

28

*Note* from 6-15-2011 until the petition date of 2-22-2023 equals $1,652,641.59 (4270 days at $387.04 interest/day). The total amount due as of the filing date was $3,065,321.12.

15.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *$570,000.00 Zimmerman Note* from 12-7-2009 until the petition date of 2-22-2023 comes to $753,493.23 (4825 days at $156.16 interest/day). The total amount due as of the filing date was $1,323,493.23.

16.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *$375,000.00 Zimmerman Note* from 1-14-2010 until the petition date of 2-22-2023 comes to $491,814.94 (4787 days at $102.74 interest/day). The total amount due as of the filing date was $866,814.94.

17.    The total pre-petition amount owed is $10,557,615.81.


I declare under penalty of perjury under the laws of the United States, States of California and of New York that the foregoing is true and correct.

Executed January 10, 2024, at Brooklyn, New York

By  /s/ Robert Mermelstein
ROBERT MERMELSTEIN

1/10-1:34pm

**Zimmerman**

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $2,250,000.00 | 8/3/2009 | $616.44 | 4951 | $3,051,986.52 | $5,301,986.52 |
| $1,412,679.53 | 6/15/2011 | $387.04 | 4270 | $1,652,641.59 | $3,065,321.12 |
| $570,000.00 | 12/7/2009 | $156.16 | 4825 | $753,493.23 | $1,323,493.23 |
| $375,000.00 | 1/14/2010 | $102.74 | 4787 | $491,814.94 | $866,814.94 |
| | | | | | **$10,557,615.81** |

**EXHIBIT "1"**

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer: **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer: **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General Policy Number: US 0023738L. on the life of **ROZY PEARL ZIMMERMAN.**

We have reached an agreement on the essential elements of the joint venture. This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV. CAPITAL CONTRIBUTIONS

Section 4.1

    Capital Contributions:  Each of us has contributed the necessary capital contribution.

## ARTICLE V.  MANAGEMENT STRUCTURE

Section 5.1

    Management by Committee:  The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI.  ASSIGNMENT

Section 6.1

    Each party shall have the right to assign his interest.

## ARTICLE VII.  DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

    Distribution of Profits:  Distribution shall be as follows:


**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/4  *2,150,000*
*+ 8n 1-*

**THE KLEIN CHARITABLE REMAINDER UNITRUST dated 2-20-1996 . . . . . 3/4**


## ARTICLE VIII.  TERM

Section 8.1

    Term and Termination:  This Agreement shall expire upon the death of **ROZY PEARL
ZIMMERMAN**


## ARTICLE IX.  CONFIDENTIALITY

Section 9.1

    Definitions:  For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.


Page 2 of 4

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date: The effective date of this Agreement shall be August 3, 2009.

:

THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009

DATED: _8/3/09_          By: _____

LESLIE KLEIN - Trustee

ı

DATED: _8/3/09_          THE KLEIN CHARITABLE REMAINDER
UNITRUST dated 2-20-1996

By: _____

KENNETH KLEIN, Trustee
Joint Venturer

Page 4 of 4

Case 2:23-bk-10990-SK    Doc 45    Filed 01/10/24    Entered 01/10/24 15:28 Desc of
Case 2:23-ap-01095-SK    Claim 45    Filed 01/10/24    Entered 01/10/24 15:28 Desc of
Main Document    Page 127 of 180

**EXHIBIT "2"**

# FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:     **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:     **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General Policy Number: US 0023738L. on the life of
**ROZY PEARL ZIMMERMAN.**

I, **LESLIE KLEIN**, state as follows:

That I transfer the interest of **THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: _____

_____
**LESLIE KLEIN**
                              Trustee of
**The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

**EXHIBIT "3"**

## NON-RECOURSE PROMISSORY NOTE

| | | |
|---|---|---|
| **Principal Sum:** | **$1,412,679.53** | **June 15, 2011** |
| **Due Date:** | **June 15, 2020** | **State of California** |

**FOR VALUE RECEIVED**, the undersigned, **LESLIE KLEIN** as Trustee of **THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ROBERT and ESTHER MERMELSTEIN** or their registered assigns (the "Holder"), the principal sum of **$1,412,679.53** , plus interest of **10%** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 10 % percent per annum. Accrued interest on the outstanding principal balance of this Note shall be compounded quarterly, on each three month anniversary of the date hereof.

**Payment.** The entire principal balance hereof, together with an interest accrued thereon, shall be due and payable on **June 15, 2020**, or at such time, if earlier, as the Holder has accelerated the maturity of the Note after the occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued

and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

**Events of Default.**
Each of the following events also shall constitute an "Event of Default":

(i)     Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due, notwithstanding payment of such amounts by Holder; and

(ii)    Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion, may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note, together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holder, and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things, the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders' security interests in the Policy or Policies, the proceeds thereof. If any proceedings shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies. The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies, the proceeds thereof. Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its obligations under this Note shall not discharge, excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other agreement contemplated thereby.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by the Holder or the Holder's attorney duly authorized, in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

**THE ROZY PEARL ZIMMERMAN  IRREVOCABLE LIFE INSURANCE TRUST**

By: _____

LESLIE KLEIN                                    Trustee
Name                                               Title

_____
(witness)

_____
(witness)

**Page 4 of  4**

## NON-RECOURSE PROMISSORY NOTE

| | | |
|---|---|---|
| **Principal Sum:** | **$570,000.00** | **December 7, 2009** |
| **Due Date:** | **December 7, 2019** | **State of California** |

**FOR VALUE RECEIVED,** the undersigned, **LESLIE KLEIN** as Trustee of **THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ROBERT and ESTHER MERMELSTEIN** or their registered assigns (the "Holder"), the principal sum of **$570,000.00,** plus interest of **10%** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 10 % percent per annum.

**Payment.** The entire principal balance hereof, together with an interest accrued thereon, shall be due and payable on **December 7, 2019,** or at such time, if earlier, as the Holder has accelerated the maturity of the Note after tne occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

Page 1 of 4

**Events of Default.**
Each of the following events also shall constitute an "Event of Default":

(i)     Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due, notwithstanding payment of such amounts by Holder; and

(ii)    Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion, may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note, together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holder, and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things, the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders' security interests in the Policy or Policies, the proceeds thereof. If any proceedings shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies. The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies, the proceeds thereof. Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its obligations under this Note shall not discharge, excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other agreement contemplated thereby.

Page 2 of 4

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by the Holder or the Holder's attorney duly authorized, in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any

right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

**THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST**

By:

_____          _____
LESLIE KLEIN                                              Trustee
Name                                                          Title

_____          _____
(witness)                                                      (witness)

Page 4 of 4

## NON-RECOURSE PROMISSORY NOTE

| | | |
|---|---|---|
| **Principal Sum:** | **$375,000** | **January 14, 2010** |
| **Due Date:** | **January 14, 2020** | **State of California** |

**FOR VALUE RECEIVED,** the undersigned, **LESLIE KLEIN** as Trustee of **THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ROBERT and ESTHER MERMELSTEIN** or their registered assigns (the "Holder"), the principal sum of **$375,000**, plus interest of **10%** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 10 % percent per annum.

**Payment.** The entire principal balance hereof, together with an interest accrued thereon, shall be due and payable on **January 14, 2020** or at such time, if earlier, as the Holder has accelerated the maturity of the Note after the occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued

Page 1 of 4

and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

**Events of Default.**
Each of the following events also shall constitute an "Event of Default":

> (i)    Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due, notwithstanding payment of such amounts by Holder; and

> (ii)   Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

> Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion, may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note, together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holder, and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things, the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders' security interests in the Policy or Policies, the proceeds thereof. If any proceedings shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies. The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies, the proceeds thereof. Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its

obligations under this Note shall not discharge, excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other agreement contemplated thereby.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by the Holder or the Holder's attorney duly authorized, in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any

Page 3 of 4

right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

**THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST**

By: _____

**LESLIE KLEIN**                          **Trustee**
**Name**                                  **Title**

_____
(witness)

_____
(witness)

Page 4 of 4

**EXHIBIT "4"**

| | Notes | | | | |
|---|---|---|---|---|---|
| 12/7/2009 | $570,000.00 | at 10% | | | |
| 12/7/2019 | $57,000 per Year | 2009 | $ | 3,904.11 | 25 Days |
| | $156.16 per Day | 2010-2022 | $ | 741,000.00 | 13x57,000 |
| | | 2023-up to 4/30/23 | $ | 18,739.20 | 120 Days |
| | | | $ | **763,643.31** | |
| | | | | | |
| 1/14/2010 | $375,000.00 | at 10% | | | |
| 1/14/2020 | $37,500 per year | 2010 | $ | 36,164.48 | 352 Days |
| | $102.74 per Day | 2011-2022 | $ | 450,000.00 | 12x37,500 |
| | | 2023-up to 4/30/23 | $ | 12,328.80 | 120 Days |
| | | | $ | **498,493.28** | |
| | | | | | |
| 6/15/2011 | $ 1,412,679.53 | at 10% | | | |
| 6/15/2020 | $141,267.95 per year | 2011 | $ | 77,408.00 | 200 days |
| | $387.04 per day | 2012-2022 | $ | 1,553,947.45 | 11x141,267.95 |
| | | 2023-up to 4/30/23 | $ | 46,444.80 | 120 Days |
| | | | $ | **1,677,800.25** | |
| | | | | | |
| | | | | | |
| Total Interest | up to 4/30/23 | | $ | 763,643.31 | |
| | | | $ | 498,493.28 | |
| | | | $ | 1,677,800.25 | |
| | | | $ | **2,939,936.84** | |

**EXHIBIT "5"**

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

## OF

## LIFE CAPITAL GROUP, LLC

A California Limited Liability Company

Dated as of [ ], 2011

NY 73548773v3

# TABLE OF CONTENTS

## ARTICLE I
### FORMATION AND BUSINESS OF THE COMPANY

| | | |
|---|---|---|
| Section 1.1 | Formation | 1 |
| Section 1.2 | Name | 1 |
| Section 1.3 | Purpose | 1 |
| Section 1.4 | Term | 1 |
| Section 1.5 | Place of Business | 1 |
| Section 1.6 | Registered Office and Agency | 1 |
| Section 1.7 | Fiscal Year | 2 |

## ARTICLE II
### MEMBERS

| | | |
|---|---|---|
| Section 2.1 | Members | 2 |
| Section 2.2 | Company Property; Company Interest | 2 |

## ARTICLE III
### CAPITAL CONTRIBUTIONS

| | | |
|---|---|---|
| Section 3.1 | Initial Capital Contribution of Members, Capital Accounts | 2 |
| Section 3.2 | Additional Capital Contributions | 2 |
| Section 3.3 | Withdrawal and Return of Capital Contributions | 3 |
| Section 3.4 | Interest | 3 |
| Section 3.5 | Negative Capital Accounts | 3 |

## ARTICLE IV
### DISTRIBUTIONS AND ALLOCATIONS

| | | |
|---|---|---|
| Section 4.1 | Allocation of Net Income and Net Losses | 3 |
| Section 4.2 | Cash Available for Distribution | 4 |
| Section 4.3 | Proceeds of Policies | 4 |
| Section 4.4 | Constructive Trust | 4 |
| Section 4.5 | Sale of Policies | 4 |
| Section 4.6 | Lenders | 4 |

## ARTICLE V
### RESERVE ACCOUNT

| | | |
|---|---|---|
| Section 5.1 | Establishing a Reserve Account | 5 |
| Section 5.2 | Distribution of Reserve Account | 5 |

## ARTICLE VI
### MANAGEMENT; CONDUCT OF MEMBERS; GOVERNANCE OF THE COMPANY

NY 73548773v3

Section 6.1    Rights and Powers of Manager...........................................................5
Section 6.2    Number, Tenure and Qualifications .............................................5
Section 6.3    Officers .........................................................................................5
Section 6.4    Reliance ........................................................................................6
Section 6.5    Indemnification of Manager, Members and Officers. ..................6
Section 6.6    Exculpation ...................................................................................7
Section 6.7    No Duties ......................................................................................7
Section 6.8    Protection of Insured's Private Information .................................7
Section 6.9    Delivery of Policy Files ...............................................................7
Section 6.10   Change Forms ...............................................................................7
Section 6.11   Further Assurances .......................................................................8
Section 6.12   Indemnification of Rechnitz .........................................................8

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES OF THE MEMBERS

Section 7.1    Representations and Warranties of Klein. ....................................8
Section 7.2    Representations and Warranties of Rechnitz ..............................10

## ARTICLE VIII
## ADMISSION OF MEMBERS

Section 8.1    Admission of Members ...............................................................11
Section 8.2    Admission of Non-Payment Policy Members .............................11

## ARTICLE IX
## MAINTENANCE OF BOOKS AND RECORDS; REPORTS TO MEMBERS; TAX RETURNS

Section 9.1    Accounting Method and Records .................................................12
Section 9.2    Company Records.........................................................................12
Section 9.3    Company Reports .........................................................................13
Section 9.4    Designation of Tax Matters Member...........................................13
Section 9.5    Tax Treatment and Elections .......................................................13

## ARTICLE X
## TRANSFER OF INTERESTS; SPECIAL PROVISIONS

Section 10.1   Transfers and Assignments...........................................................13
Section 10.2   Permitted Transfers......................................................................13
Section 10.3   Substitute Members .....................................................................14
Section 10.4   Right of First Refusal. .................................................................14
Section 10.5   Tag-Along Rights and Obligations. .............................................15
Section 10.6   Miscellaneous Provisions Affecting Transfer. ...........................16

## ARTICLE XI
## DISSOLUTION, LIQUIDATION, TERMINATION AND CONVERSION

Section 11.1   Dissolution, etc ...........................................................................16

-ii-

Section 11.2   Winding Up. ...............................................................................................16
Section 11.3   Final Distribution ..........................................................................................17
Section 11.4   Time for Liquidation, etc ..............................................................................17
Section 11.5   Termination ...................................................................................................17
Section 11.6   Return of Contribution Nonrecourse to Other Members .............................17

ARTICLE XII
DISPUTE RESOLUTION

Section 12.1   Rabbinical Counsel ......................................................................................18

ARTICLE XIII
MISCELLANEOUS

Section 13.1   Entire Agreement ..........................................................................................18
Section 13.2   Other Ventures ..............................................................................................18
Section 13.3   Amendments ..................................................................................................18
Section 13.4   Choice of Law ...............................................................................................18
Section 13.5   Successors and Assigns; Third Party Beneficiaries .....................................18
Section 13.6   Interpretation .................................................................................................18
Section 13.7   Captions .........................................................................................................19
Section 13.8   Severability ...................................................................................................19
Section 13.9   Counterparts ..................................................................................................19
Section 13.10  Non-Waiver ...................................................................................................19
Section 13.11  Notices ..........................................................................................................19

ARTICLE XIV
DEFINITIONS

Section 14.1   Definitions. ...................................................................................................20

AMENDED AND RESTATED LIMITED LIABILITY COMPANY
AGREEMENT of LIFE CAPITAL GROUP, LLC (this "**Agreement**"), a California limited
liability company (the "**Company**"), dated as of [_____], 2011, among Shlomo Rechnitz,
an individual residing in the State of California ("**Rechnitz**"), Leslie Klein, an individual
residing in the State of California ("**Klein**"), and the Persons that become Members from time to
time after the date hereof in accordance with the terms hereof.

## WITNESSETH:

WHEREAS, Rechnitz and Klein entered into that certain Limited Liability
Company Agreement of the Company dated as of June 1, 2011 (the "**Original Agreement**");
and

WHEREAS, Rechnitz and Klein wish to amend and restate the Original
Agreement in its entirety.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein,
and for other good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, the Members agree to amend and restate the Original Agreement in its entirety as
follows:

## ARTICLE I
### FORMATION AND BUSINESS OF THE COMPANY

Section 1.1    Formation.    The Company was formed on April 8, 2011 by the
filing of a Certificate of Formation (the "**Certificate**") with the Secretary of State of California.
The Members hereby agree to operate the Company as a limited liability company pursuant to
the provisions of the Act and upon and subject to the terms and conditions set forth in this
Agreement.  Except as expressly provided herein to the contrary, the rights and obligations of the
Members and the administration and termination of the Company shall be governed by the Act.

Section 1.2    Name.    The name of the Company shall continue to be Life Capital
Group, LLC, under which name all business and affairs of the Company shall be conducted.

Section 1.3    Purpose.    The purpose of the Company is to engage in any lawful
act or activity for which a limited liability company may be organized under the Act.

Section 1.4    Term.    The term of the Company shall continue until terminated in
accordance with the provisions of Article XI of this Agreement or otherwise dissolved and
wound up pursuant to the Act.

Section 1.5    Place of Business.    The Company shall have its principal place or
places of business at such place or places as the Manager may, from time to time, select.

Section 1.6    Registered Office and Agency.    The address of the registered
office of the Company in the State of California is 5697 W. 3rd Street, Suite 200, Los Angeles,
California 90036.  The name and address of the registered agent for service of process on the

Company in the State of California is Shlomo Rechnitz, 5697 W. 3rd Street, Suite 200, Los Angeles, California 90036.

       Section 1.7   <u>Fiscal Year</u>.  The term **"Fiscal Year"** shall mean, subject to the provisions of Section 706 of the Code, each of (a) the period commencing on the date of formation of the Company and ending on December 31, 2011, (b) any subsequent 12-month period commencing on January 1 and ending on December 31 and (c) the period commencing on January 1 and ending on the Dissolution Date.

ARTICLE II
MEMBERS

       Section 2.1   <u>Members</u>.  The Company shall consist of the Members executing this Agreement and any substitute or additional Members admitted to the Company in accordance with the terms hereof. Each initial Member shall be deemed admitted as a Member of the Company at such time as such Member has made its Initial Capital Contribution to the Company.

       Section 2.2   <u>Company Property; Company Interest</u>.  No property of the Company shall be deemed to be owned by any Member individually, but all of such property shall be owned by, and title thereto shall be vested solely in, the Company.

ARTICLE III
CAPITAL CONTRIBUTIONS

       Section 3.1   <u>Initial Capital Contribution of Members, Capital Accounts</u>.  Each Member has contributed to the capital of the Company, as such Member's Initial Capital Contribution, the amount of cash, or property with a value, set forth on <u>Schedule A</u>. The Company shall maintain a record of: (a) the number of Interests held by each Member and (b) the respective Percentage Interest of each Member. The Manager shall update such <u>Schedule A</u> from time to time to reflect changes in such information. The Members agree that Klein's Initial Capital Contribution associated with each Policy shall equal the sum of the total amount of premium payments made on such Policy by Klein and all other costs and expenses incurred by Klein in servicing and maintaining such Policy as of the date of the Original Agreement. The Members agree that Rechnitz's Initial Capital Contribution associated with the Policies (in the order of each Policy that first generates proceeds) shall be deemed to be $3,800,000. The Company will establish and maintain a Capital Account for each Member throughout the full term of the Company.

       Section 3.2   <u>Additional Capital Contributions</u>.  Other than the Initial Capital Contributions made by the Members upon admission to the Company in accordance with <u>Section 3.1</u> and <u>Article VIII</u>, the Members shall not be required to make any additional contributions to the Company; except that Rechnitz shall be obligated to contribute to the Company all premium payments and all other costs and expenses incurred by the Company in servicing and maintaining the Policies which are not Non-Payment Policies after the date of this Agreement and each Non-Payment Policy Member shall be obligated to contribute to the Company all premium payments and all other costs and expenses incurred by the Company in

-2-

servicing and maintaining the applicable Non-Payment Policy after the date such Non-Payment Policy Member was admitted to the Company as a Member.

Section 3.3    Withdrawal and Return of Capital Contributions.

(a)    No Member shall be entitled to demand a return of such Member's Capital Contribution (including any earnings thereon) or to withdraw any portion of such Member's Capital Account except as expressly provided in this Agreement.  Except as expressly provided herein, no Member shall have the right to demand a distribution of property other than cash for its Interest.  Each Member hereby waives any right such Member may otherwise have to cause any asset of the Company to be partitioned or to file a complaint or institute any proceeding at law or in equity seeking the partition of any such asset.  Except as otherwise provided herein, no Member shall have priority over any other Member, either as to a return of such Member's Capital Contribution or as to Net Income, Net Losses, any other item of Company income, gain, loss or deduction, or Company distributions.

(b)    No Member shall be personally liable for the return of the Capital Contributions of any other Member or any portion thereof, it being expressly understood that any such return shall be made solely from available Company assets, if any.

Section 3.4    Interest.  Interest, if any, earned on funds contributed or held by the Company shall inure to the benefit of the Company.  The Members shall not be entitled to receive interest or any other payments from the Company with respect to their Capital Contributions or Capital Accounts, except as otherwise provided for herein.

Section 3.5    Negative Capital Accounts.  Except as may be required by the provisions of the Act or in respect of any negative balance resulting from a withdrawal of capital or distribution in contravention of this Agreement, at no time shall any Member with a negative Capital Account balance have any obligation to the Company or the other Members to restore such negative balance, and such negative balance shall not be treated as an asset of the Company.

ARTICLE IV
DISTRIBUTIONS AND ALLOCATIONS

Section 4.1    Allocation of Net Income and Net Losses.

(a)    Net Income with respect to a Policy for any Fiscal Year shall be allocated (i) first, to Rechnitz to the extent of Rechnitz's Priority Return with respect to such Policy; (ii) second, to Rechnitz, in an amount equal to the product of (X) fifty percent (50%) and (Y) the remaining Net Income for such Policy less the amount equal to Klein's Priority Return with respect to such Policy; (iii) third, to Rechnitz, until $3,800,000 of Net Income plus accrued interest thereon at a rate of twelve percent (12%) per annum has been allocated to Rechnitz in the aggregate (without regard to allocations of Net Income under subclauses (i) or (ii)); and (iv) thereafter, to Klein any remaining Net Income for such Policy.

(b)    Net Losses with respect to a Policy for any Fiscal Year shall be allocated to Klein and Rechnitz in proportion to their Capital Contributions associated with such Policy.

-3-

Section 4.2    Cash Available for Distribution.    Subject to Article XI, the Company shall distribute Available Cash to the Members at such times and in such amounts as determined by Rechnitz in accordance with this Agreement.

Section 4.3    Proceeds of Policies.    If at any time the Company receives any proceeds from any Policy that is not a Non-Payment Policy (following the death of an Insured or otherwise), then any such proceeds shall be distributed as follows:

(a)    first, to Rechnitz by wire transfer into an account designated by Rechnitz, in an amount up to the Rechnitz Amount for such Policy;

(b)    second, to Rechnitz by wire transfer into an account designated by Rechnitz, in an amount equal to the product of (X) fifty percent (50%) and (Y) the remaining proceeds for such Policy less the amount equal to Klein's Priority Return with respect to such Policy;

(c)    third, to Rechnitz by wire transfer into an account designated by Rechnitz, in an amount equal to $3,800,000 plus accrued interest thereon at a rate of twelve percent (12%) per annum;

(d)    fourth, (A) first, to each of the Lenders, pro-rata, based on the outstanding principal balance owed to such Lender as set forth on Schedule C, until such outstanding principal balance is equal to zero, in an aggregate amount up to the Klein Amount for such Policy and (B) second, any remaining Klein Amount with respect to such Policy to Klein by wire transfer into an account designated by Klein;

(e)    fifth, any remaining proceeds to Klein by wire transfer into an account designated by Klein, provided, however, that if the balance of the Reserve Account is less than $2,500,000, then proceeds distributable to Klein under this clause (e) shall be deposited in the Reserve Account until such balance is equal to $2,500,000.

Section 4.4    Constructive Trust.    If any Member receives any proceeds in respect of any Policy (following the death of an Insured or otherwise), such Member shall hold such proceeds in a constructive trust for the Company and shall within one (1) Business Day inform the other Members and the Manager and deposit such proceeds in the Reserve Account.

Section 4.5    Sale of Policies.    The Company shall be entitled to sell any Policy to any Person with the prior written consent of each of the Members.    Notwithstanding the immediately preceding sentence, upon Klein's written consent, Rechnitz or his designee shall be entitled to purchase any Policy that is not a Non-Payment Policy from the Company by transferring an amount equal to the Klein Amount for such Policy to the Company, which for administrative convenience shall be subsequently distributed to an account designated by Klein.

Section 4.6    Lenders.    The Members agree that (i) the Company may pay amounts pursuant to Section 4.3(d) directly to the Lenders, and in such event, the payments will be treated as distributions by the Company to Klein and subsequently transferred by Klein to the Lenders, (ii) nothing herein is intended to grant to the Lenders an equity interest in the Company,

-4-

and (iii) nothing herein is intended to imply that the Company is assuming the obligations owed to the Lenders.

## ARTICLE V
## RESERVE ACCOUNT

Section 5.1    Establishing a Reserve Account.    As soon as practicable the Company shall establish the Reserve Account with the Account Bank in the name of Company.

Section 5.2    Distribution of Reserve Account.    Amounts in the Reserve Account shall be distributed to certain Members in certain specified amounts under the following circumstances: (a) if the amount of Net Income allocated to Klein with respect to a Policy under Section 4.1 for a Fiscal Year exceeds the amount of proceeds distributed to Klein with respect to such Policy pursuant to Section 4.3; then 40% of such excess shall be distributed to Klein from the Reserve Account; (b) if upon a disposition of a Policy or the receipt of proceeds from such policy, the Rechnitz Amount with respect to the Policy exceeds the amount of proceeds distributed to Rechnitz with respect to such Policy pursuant to Section 4.3, then the amount of such excess shall be distributed to Rechnitz from the Reserve Account; and (c) if agreed upon by the Members, then the amount agreed upon by the Members shall be distributed to Klein from the Reserve Account.

## ARTICLE VI
## MANAGEMENT; CONDUCT OF MEMBERS; GOVERNANCE OF THE COMPANY

Section 6.1    Rights and Powers of Manager.    The business and affairs of the Company shall be managed by the Manager. The Manager shall direct, manage, and control the business of the Company to the best of the Manager's ability. Except for situations in which the approval of the Members is expressly required by this Agreement or by nonwaivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all acts or activities customary or incident to the management of the Company's business. Nothing contained in this Agreement shall require any person to inquire into the authority of the Manager to execute and deliver any document on behalf of the Company or to bind the Company pursuant to such document.

Section 6.2    Number, Tenure and Qualifications.    The Company shall have one Manager, which initially shall be Jonathon Polter ("**Polter**"), an individual residing at 2000 Town Center, Suite 1490, Southfield, Michigan 48075. Polter shall remain as the Manager unless he resigns from such position, is relieved of his duties by (i) if there are two Members or less, a unanimous vote of the Members and (ii) otherwise, an affirmative vote of Members holding a majority of the Interests. Subsequent Managers shall be elected by the affirmative vote of Members holding a majority of the Interests. Managers need not be residents of the State of California.

Section 6.3    Officers.    The Manager may delegate the management of the Company's day-to-day business affairs to a Chief Executive Officer and other officers of the Company designated by the Manager and approved by an affirmative vote of Members holding a

NY 73548773v3

majority of the Interests and, unless otherwise decided by the Manager, all actions of the Company may be taken by the appropriate duly authorized officers.

Section 6.4    Reliance.  The Manager shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any officers, employees, or committees of the Company, or by any other Person as to matters such Manager reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including, without limitation, information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits or losses of the Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

Section 6.5    Indemnification of Manager, Members and Officers.

(a)    General.    The Company shall indemnify any Person (a "**Covered Person**") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including an action by or in the right of the Company) by reason of the fact that he is or was a Manager, Member or officer of the Company, or is or was serving at the request of the Company as a director, manager or officer of another limited liability company, corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith with no willful misconduct or gross negligence and in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.    The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

(b)    Indemnification in Certain Cases.  To the extent that a Covered Person has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in clause (a) of this Section 6.5, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

(c)    Advances for Expenses.  Expenses (including attorneys' fees) incurred in defending a civil, criminal, administrative or investigative action, suit or proceeding may be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be ultimately determined that he is not entitled to be indemnified by the Company as authorized in this Section 6.5.

(d)     Rights Non-Exclusive.  The indemnification and advancement of expenses provided by, or granted pursuant to, the other subparagraphs of this Section 6.5 shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any law, agreement or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office.

(e)     Insurance.  The Company shall have the power to purchase and maintain insurance on behalf of any Person who is or was a Covered Person against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Company would have the power to indemnify him against such liability under the provisions of this Section 6.5.

(f)     Survival of Rights.  The indemnification and advancement of expenses provided by, or granted pursuant to this Section 6.5 shall continue as to a Person who has ceased to be an officer, Manager or Member and shall inure to the benefit of the heirs, executors and administrators of such Person.

Section 6.6     Exculpation.  No Member, Manager or officer of the Company shall be liable, in damages or otherwise, to the Company or its Members for any act or omission performed or omitted by such Member, Manager or officer pursuant to authority granted by this Agreement except to the extent such Person fails to meet the standard for indemnification set forth in Section 6.5(a).

Section 6.7     No Duties.  Any duties (including fiduciary duties) of a Covered Person to the Company or to any other Covered Person that would otherwise apply at law or in equity are hereby eliminated to the fullest extent permitted under the Act and any other applicable law, provided, that (i) the foregoing shall not eliminate the obligation of each Member and the Manager to act in compliance with the express terms of this Agreement and (ii) the foregoing shall not be deemed to eliminate the implied covenant of good faith and fair dealing.

Section 6.8     Protection of Insured's Private Information.  Manager and each Member acknowledge that insurance regulations and other applicable Laws are structured to provide confidentiality to policy owners and insureds with respect to Consumer Information in connection with ownership or sale of their policies, and that the Manager and each Member and all of their respective agents and representatives, are obligated to keep Consumer Information confidential in accordance with applicable Laws.  The Manager and each Member agree to comply with all applicable Laws with respect to the confidentiality of Consumer Information; provided, that (i) the Manager and each Member may disclose such information to their internal or external auditors and attorneys and as required or permitted by Law, and (ii) Klein may take all necessary and appropriate actions to transfer ownership of the Policies to the Company.

Section 6.9     Delivery of Policy Files.  Klein has previously delivered each Policy File as directed by the Manager.

Section 6.10     Change Forms.  On the date of the Original Agreement, Klein executed and delivered Change Forms to the Company or at the Company's direction, which Change Forms changed the owner and Beneficiary of the Policy to the Company or the

-7-

Company's designee. In addition, Klein shall execute and deliver any additional instruments of transfer that the Company may reasonably request necessary to evidence the assignment of the Policy and any rights therein to the Company or its designee.

Section 6.11 <u>Further Assurances</u>. From and after the date hereof, each Member shall execute and deliver such other documents and instruments, and take such further actions, as may be reasonably requested from time to time by another Member to carry out the provisions of this Agreement and give effect to the transactions contemplated hereby. Without limiting the foregoing, Klein shall cooperate with Rechnitz in causing the Company or its designee to be recorded as the owner and beneficiary of each Policy on the books and records of the relevant issuing insurance companies.

Section 6.12 <u>Indemnification of Rechnitz</u>. Klein shall indemnify and hold harmless (which indemnification shall survive any termination of this Agreement and the dissolution of the Company) Rechnitz and his Affiliates, and each such Person's respective officers, directors, employees, attorneys, agents and representatives (each, an "**Indemnified Person**"), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and actual expenses incurred (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or asserted against or incurred by any such Indemnified Person, and in connection with or arising out of (i) any breach of any representation, covenant or other obligation of Klein hereunder, (ii) the transactions contemplated hereunder, (iii) any actions or failures to act in connection therewith, (iv) any and all reasonable legal costs and actual expenses arising out of or incurred in connection with disputes between or among Klein and Rechnitz or (v) any of the Policies or any claims of third parties relating thereto (collectively, "**Indemnified Liabilities**"); provided, that Klein shall not be liable for any indemnification to an Indemnified Person to the extent that any such Indemnified Liability results from that Indemnified Person's gross negligence or willful misconduct; provided, further, that the aggregate amount of Klein's liability under this <u>Section 6.12</u> shall be limited to the aggregate of the Rechnitz Amounts for all of the Policies.

ARTICLE VII
REPRESENTATIONS AND WARRANTIES OF THE MEMBERS

Section 7.1 <u>Representations and Warranties of Klein</u>.

(a) <u>Power and Authority</u>. Klein has full power, authority and right to execute and deliver this Agreement and has, and will continue to have during the entire term of this Agreement, full power and authority to perform his obligations hereunder, and has taken all necessary action to authorize the execution and delivery of this Agreement, as well as the performance of its obligations hereunder.

(b) <u>Binding Obligation</u>. This Agreement constitutes the legal, valid and binding obligations of Klein enforceable against Klein in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

NY 73548773v3

(c) <u>Consent of Third Parties</u>. No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by Klein in connection with the execution of this Agreement and the compliance by Klein with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or the taking by Klein of any other action contemplated hereby.

(d) <u>Policies</u>. With respect to each Policy, to the best of Klein's knowledge:

(i) at the issuance of such Policy, the related Insured or Original Owner thereof was not a party to any written or oral agreement or arrangement to cause the same or interests therein to be issued, assigned, sold, transferred, or otherwise disposed of in violation of applicable law or public policy;

(ii) at the issuance of such Policy, the related Insured or Original Owner thereof had the financial capacity to pay the premiums necessary to maintain such Policy in force;

(iii) at the issuance of such Policy the related Original Owner had an insurable interest in the life of the Insured;

(iv) the material medical or financial information supplied by or on behalf of the Insured or Original Owner of such Policy in the application and related materials delivered to the applicable issuing insurance company in connection with the issuance of such Policy was not false, incomplete or misleading in any material respect;

(v) Klein does not possess or control any material documentation or information related to such Policy, or the acquisition or maintenance thereof by Klein, that has not been delivered or disclosed in writing to Rechnitz or his agents;

(vi) prior to the date of the Original Agreement, Klein was trustee of the applicable Original Owner which held sole legal and beneficial title thereto;

(vii) Klein, in his capacity as trustee of the applicable Original Owner, acquired sole legal and beneficial title thereto and had the power and authority to enter into and consummate the Original Agreement;

(viii) Immediately prior to its transfer to the Company under the Original Agreement, Klein held sole legal and beneficial title thereto;

(ix) upon the transfer of such Policy, Company or its designee, holds good and marketable title to and ownership of such Policy free and clear of any liens, charges, rights, encumbrances or other interests;

(x) such Policy was acquired in a manner in compliance, in all material respects, with the Laws applicable to the purchase of life insurance policies, as then in effect and as then interpreted by the relevant regulators or in case law;

NY 73548773v3

(xi)    except as disclosed to Rechnitz in writing, no previous owner of such Policy has waived, amended or terminated any material provision of, or any material rights in relation to, such Policy;

(xii)    except as disclosed on Schedule 7.1(d)(xii), the premiums for such Policy have been paid such that such Policy will not be in a grace period as of the date of the Original Agreement and such Policy has not been cancelled as of the date of the Original Agreement;

(xiii)    Klein has disclosed or delivered to Rechnitz and the Company in writing all information received by Klein or any of his agents from the related issuing insurance company related to any change in the terms of such Policy, including with respect to an intent to increase the cost of insurance for such Policy;

(xiv)    there is no current or pending written notice that has been issued to Klein by the related issuing insurance company of such issuing insurance company's intention to cancel, contest, rescind or refuse payment under such Policy;

(xv)    all the information contained in each of the documents in the related Policy File or otherwise delivered by or on behalf of Klein to the Company and Rechnitz in connection with such Policy is true, complete and correct in all material respects;

(xvi)    the related Policy File contains the Policy, the original application for such Policy, any Policy Illustration and any other documentation in Klein's possession.

(xvii)    there is not any pending or threatened Proceeding challenging the validity, ownership or enforceability of such Policy or Klein's ownership rights in such Policy;

(xviii)    such Policy was not issued pursuant to or in connection with an agreement whereby the premiums required to be paid on such Policy were paid by any Person pursuant to a recourse or non-recourse premium financing program;

(xix)    Klein has not required any broker to sign an agreement offering Klein or any other Person the "right of last offer" in connection with the purchase of such Policy; and

(xx)    such Policy has been issued by the related issuing insurance company and is in force and any related contestability period and any suicide exclusion period has expired.

Section 7.2    Representations and Warranties of Rechnitz.    Rechnitz hereby represents and warrants that:

(i)    Authority.    Rechnitz has full power, authority and right to execute this Agreement and has, and will continue to have during the entire term of this Agreement, full power and authority to perform his obligations hereunder, and has taken all

necessary action to authorize the execution and delivery of this Agreement, as well as the performance of his obligations hereunder.

(ii)     Binding Obligation. This Agreement constitutes Rechnitz's legal, valid and binding obligation, enforceable against Rechnitz in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

(iii)     Consent of Third Parties. No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by Rechnitz in connection with the execution of this Agreement and the compliance by Rechnitz with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or the taking by Rechnitz of any other action contemplated hereby.

ARTICLE VIII
ADMISSION OF MEMBERS

Section 8.1     Admission of Members. Subject to Section 8.2, upon the approval of the Members by majority vote, one or more Persons may be admitted to the Company as Members. The Members by majority vote shall determine the number of Interests and the Percentage Interest to be offered to any such Member and the Initial Capital Contribution to be made by any such Member. Each such Person shall be admitted as a Member at the time such Person (a) executes and delivers a copy of this Agreement to the Manager and (b) if applicable, makes its Initial Capital Contribution to the Company. The Manager shall update Schedule A to reflect the admission of any such Members.

Section 8.2     Admission of Non-Payment Policy Members. It is agreed and acknowledged by the Members that Rechnitz's sole obligation with respect to the Company is making Capital Contributions for the payment of premiums on the Policies and the expenses associated with the Policies, in each case after the date of this Agreement. Rechnitz shall provide the Company and Klein with six (6) months prior written notice if Rechnitz elects to cease paying premiums in respect of any Policy (such Policy, a "**Non-Payment Policy**"). After delivery of such notice, Rechnitz or Klein shall have the right to introduce any Person to the Company as a potential Member who agrees in writing to assume Rechnitz's obligations for the payment of premiums and other costs and expenses with respect to such Non-Payment Policy, which person shall be admitted as a Member upon the approval of the Members by majority vote (such a Member, a "**Non-Payment Policy Member**"). With respect to any Non-Payment Policy, any payment of premiums and other costs and expenses shall be contributed to the capital of the Company by the applicable Non-Payment Policy Member. If at any time the Company receives any proceeds from any Non-Payment Policy (following the death of an Insured or otherwise), then any such proceeds shall be distributed as follows:

(a)     First, to the applicable Non-Payment Policy Member by wire transfer into an account designated by such Non-Payment Policy Member, in an amount up to (x) the total

NY 73548773v3

amount of Capital Contributions made on such Policy by such Non-Payment Policy Member and (y) the Priority Return of such Non-Payment Policy Member on such Policy computed starting on the date such Non-Payment Policy Member was admitted as a Member;

(b)     Second, by wire transfer into an account designated by Rechnitz, in an amount equal to the Rechnitz Amount for such Policy;

(c)     Third, by wire transfer into an account designated by Klein, in an amount equal to the Klein Amount for such Policy;

(d)     Fourth, to the applicable Non-Payment Policy Member by wire transfer into an account designated by such Non-Payment Policy Member, in an amount equal to fifty percent (50%) of all remaining proceeds from such Policy;

(e)     Fifth, to Rechnitz and Klein by wire transfers into accounts respectively designated by them in proportion to the Capital Contributions made by them with respect to each such Non-Payment Member Policy; provided, however that if Klein introduced the related Non-Payment Policy Member to the Company, then 25% of the amount distributable under this clause (e) to Rechnitz shall be distributed to Klein instead.

Notwithstanding Section 4.1 hereof, Net Income associated with a Non-Payment Policy shall be allocated to each Member to the extent of any Priority Return distributed to such Member with respect to the Non-Payment Policy and to the extent of any distributions made to a Member pursuant to Section 8.2(d) or Section 8.2(e) above with respect to such Non-Payment Policy . Notwithstanding Section 4.1 hereof, Net Losses associated with a Non-Payment Policy shall be allocated to each Member in proportion to the Capital Contributions made by such Member with respect to such Non-Payment Policy.

ARTICLE IX
MAINTENANCE OF BOOKS AND RECORDS;
REPORTS TO MEMBERS; TAX RETURNS

Section 9.1     Accounting Method and Records.  Rechnitz shall determine the accounting method to be used by the Company.  The Company shall maintain such accounting records as shall reflect all Company transactions and as shall be appropriate and adequate for the Company's business.

Section 9.2     Company Records.  The Company shall maintain the following records, within or outside the State of California: (a) a copy of the Company's accounting records and federal, state, local and foreign income tax or information returns and reports, if any, for the five most recent Fiscal Years; and (b) all other records and reports required by the Act or otherwise to be maintained by the Company. Each Member, and such Member's duly authorized representatives or agents, shall, for any purpose reasonably related to his interest as a Member, have reasonable access to such books and records at such office and shall have the right to inspect and copy such books and records; provided, however, that if a Member was an officer, consultant or employee of the Company received his/her Interest pursuant to a profits interests grant agreement ceases to be an employee, consultant or officer of the Company, such Member

shall only have the right to receive books and records that he/she has the right to require the Company to provide to him/her in accordance with applicable law.

   Section 9.3 <u>Company Reports</u>.  The Company shall cause to be furnished to each Member and each other Person who was a Member during the period in question (a) such reports and financial statements as may be reasonably required for his financial reporting requirements, including, without limitation, copies of all annual, quarterly and monthly financial statements, and (b) detailed financial statements and information and documents (including Form K-1) necessary or desirable for the preparation or support of such Member's tax returns required in any jurisdiction, as soon as practicable after the end of each Fiscal Year.

   Section 9.4 <u>Designation of Tax Matters Member</u>.  Rechnitz is designated the "**Tax Matters Member**" (as defined in Code Section 6231), and is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including, without limitation, administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.  The Members agree to cooperate with each other and to do or refrain from doing any and all things reasonably required to conduct such proceedings.

   Section 9.5 <u>Tax Treatment and Elections</u>.  The Company shall be treated as a partnership for federal income tax purposes, the Members shall be treated as partners for federal income tax purposes, and each of the Members agrees to report consistently with such treatment. The Manager shall make all elections necessary to give effect to such treatment.

ARTICLE X<br>TRANSFER OF INTERESTS; SPECIAL PROVISIONS

   Section 10.1 <u>Transfers and Assignments</u>.

   (a) No Member shall be permitted to Transfer any Interest to a Person other than a Permitted Transferee, except in accordance with the provisions set forth in this <u>Article X</u>.

   Section 10.2 <u>Permitted Transfers</u>.

   (a) Each Member shall notify the Manager and the other Members of any proposed Transfer to a Permitted Transferee by such Member, or by any of its Affiliates, in the case of an indirect Transfer of an Interest, which notice shall set forth the name and address of the Permitted Transferee and the nature of the relationship between such Member and such Permitted Transferee, at least ten (10) calendar days prior to the proposed date of such Transfer. Each Member shall be responsible for paying all transfer, gains or similar taxes, if any, and all reasonable costs and expenses of the Company, including reasonable attorneys' fees, arising out of any Transfer by such Member of all or a portion of its Interest (or by any of its Affiliates in the case of an indirect Transfer of an Interest) to a Permitted Transferee.  As a condition to any Transfer of all or any portion of an Interest in the Company to a Permitted Transferee shall execute and deliver to the Company a joinder agreement, in form of <u>Exhibit A</u> (a "**Joinder Agreement**").  All of the provisions of this Agreement, including without limitation, the provisions of this <u>Article X</u>, shall be applicable to and binding upon each Permitted Transferee.

NY 73548773v3

(b)     The transfer by a Member of all or any portion of its Interest (including, without limitation, any transfer to a Permitted Transferee) shall not release such Member from any or all of its obligations under this Agreement arising prior to the date of such Transfer.

Section 10.3    Substitute Members.    A Permitted Transferee of the Interest of a Member or a transferee of the Interest of a Member pursuant to Sections 10.4 and 10.5 of this Agreement, or any portion thereof, shall become a substitute Member entitled to all the rights, and subject to all of the obligations and restrictions, of the transferor Member if, and only if:

(a)     the transferor assigns the transferee such right;

(b)     the transferor or transferee pays to the Company all reasonable costs and expenses incurred by the Company in connection with such substitution; and

(c)     the transferee executes and delivers a Joinder Agreement.

Section 10.4    Right of First Refusal.

(a)     Except for Transfers pursuant to or contemplated by Section 10.2, if any Member (a "**Selling Member**") receives a bona fide written offer from an independent third party (a "**Third Party**") to purchase any or all of such Selling Member's Interests for cash and such Selling Member desires to Transfer any or all of such Interests (the "**Offered Interests**") pursuant to such offer, prior to any Transfer it shall give written notice of the proposed Transfer (the "**Notice of Intention**") to the Company and the other Members (the "**Remaining Members**") specifying the number of Offered Interests which such Selling Member wishes to Transfer, the proposed transferee, the proposed purchase price for the Offered Interests (the "**Offer Price**") and the other material terms and conditions of the proposed Transfer.

(b)     For a period of thirty (30) days after receipt of the Notice of Intention (the "**Option Period**"), each of the Remaining Members shall have the irrevocable option to purchase at the Offer Price and on the other terms specified in the Notice of Intention, all of the Offered Interests pro rata based on the Percentage Interest of each Remaining Member; provided, however, that if any Remaining Member does not purchase any or all of its pro rata portion of such Offered Interests, the other Remaining Members shall have the right to purchase such portion, pro rata, until all of such Offered Interests are purchased. The option of a Remaining Member pursuant to this Section 10.4(b) (the "**Remaining Members Option**") shall be exercisable by delivery of a notice (the "**Remaining Members Notice**") setting forth the maximum number of Offered Interests that such Remaining Member wishes to purchase, including any number which would be allocated to such Remaining Member if any other Remaining Member does not purchase all or any portion of its pro rata portion, to the Selling Member, the Company and the other Remaining Members and shall expire if the Remaining Members Notice is not delivered prior to the expiration of the Option Period.

(c)     If all notices required to be given pursuant to this Section 10.4 have been duly given, and the Remaining Members determine not to exercise their respective options to purchase all of the Offered Interests at the Offer Price and on the other terms specified in the Notice of Intention or determine, with the consent of the Selling Member, to exercise their options to purchase less than all of the Offered Interests, then the Selling Member shall have the

-14-

right, for a period of ninety (90) days from the earlier of (a) the expiration of the Option Period and (b) the date on which such Selling Member receives notice from the Remaining Members that they will not exercise the option granted pursuant to this Section 10.4, to accept the bona fide offer from the Third Party and enter into an agreement to sell the Offered Interests remaining unsold under this Section 10.4 at a price not less than the Offer Price and on the same terms as set forth in the Notice of Intention; provided that prior to any such Transfer to a Third Party, such Third Party executes and delivers to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby becomes a party to this Agreement.

(d) The closing of any purchase and sale of any Interests to a Remaining Member pursuant to this Section 10.4 shall take place at the offices of the Company on such date, not later than sixty (60) days after the delivery to the Selling Member of the Remaining Members Notice. At the closing of such purchase and sale, the Secretary or such other officer of the Company shall record such Transfer in the books of the Company against evidence of such Transfer, delivery of the Offer Price therefor and an executed Joinder Agreement.

(e) If the Remaining Members Option is not exercised, and the Offered Interests are not sold pursuant to Section 10.4(c) within the ninety (90) day period referred to therein, such sale may not be carried out without complying again with the terms of this Section 10.4.

Section 10.5   Tag-Along Rights and Obligations.

(a) In the event that after complying with the terms of Section 10.4, the Selling Member desires to sell (the "**Disposition**") the Offered Securities to a Third Person (the "**Acquirer**"), the Selling Member's right to accept such offer to purchase the Offered Securities shall be conditioned on each Remaining Member being offered the right to sell to the Acquirer its pro rata portion of the Offered Securities (based on the Percentage Interest of each Remaining Member) in such Disposition in accordance with this Section 10.5. The Selling Member shall give notice (the "**Disposition Notice**") to each Remaining Member at least thirty (30) days prior to the consummation of the Disposition specifying the number of Offered Interests which such Selling Member wishes to Transfer in the proposed Disposition, the proposed transferee, the proposed purchase price for the Offered Interests and the other material terms and conditions of the proposed Disposition.

(b) The election to participate in the Disposition by the Remaining Members pursuant to Section 10.5(a) shall be exercised by notice to the Selling Member given within the time period specified in the Disposition Notice, which time period shall not be less than fifteen (15) days after such Disposition Notice is given. If any Remaining Member gives notice of its election to sell, it shall be obligated to sell the number of Interests specified in such Remaining Member's notice upon the terms and subject to the conditions specified in Section 10.5(a) to the Acquirer (which shall be the same for the other Remaining Members and the Selling Member), conditional upon the closing of the Disposition.

(c) The sale or Transfer of Interests to the Acquirer by the Selling Member and by the Remaining Members electing to participate in the Disposition pursuant to this Section 10.5 shall occur simultaneously and be on the same terms and at the same price as the

-15-

Interests sold by the Selling Member; provided that prior to any such Transfer to an Acquirer, such Acquirer shall execute and deliver to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby become a party to this Agreement.

(d)     If the Acquirer declines to purchase from such Remaining Members their respective proportionate number of Interests calculated in accordance with this Section 10.5, the Selling Member will not sell any Interests to the Acquirer.

Section 10.6    Miscellaneous Provisions Affecting Transfer.

(a)     Upon the Transfer of all or any portion of a Member's Interests as permitted or required under this Agreement, including, without limitation, as provided in this Article X, (i) the income, loss, gain, deduction and credit attributable to the Interests so transferred shall be allocated between the transferor and transferee based upon the number of days during the applicable Fiscal Year that the Interests so transferred was held by each of them, without regard to the results of Company activities during the period in which each was the holder; provided that the Manager shall, at the request and expense of the transferring Member, cause an interim closing of the Company's books as of the effective date of Transfer for purposes of allocating such items between the transferor and transferee; and (ii) the transferor shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods preceding the date of Transfer, and the transferee shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods on and after the date of Transfer based upon the number of days during the applicable Fiscal Year that the Interests so transferred were held by each of them, without regard to the results of Company activities during the period in which each was the holder.

(b)     The Company shall be entitled to treat the record owner of any Interests as the absolute owner thereof, and shall incur no liability for distributions of cash or other property or allocations of income, gain, loss, deduction or credit made in good faith to such owner until such time as a written assignment of such Interests has been received, accepted and recorded on the books of the Company.

## ARTICLE XI
### DISSOLUTION, LIQUIDATION, TERMINATION AND CONVERSION

Section 11.1    Dissolution, etc.    The Company shall be dissolved upon the occurrence of any of the following events (the date of such occurrence, the "**Dissolution Date**"):

(a)     As approved by the majority vote of the Members; or

(b)     As otherwise required by applicable law.

Section 11.2    Winding Up.

(a)     Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The

Manager shall immediately proceed to wind up the affairs of the Company in accordance with this Section 11.2.

(b)     Notwithstanding anything to the contrary in this Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(c)     The Members shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

Section 11.3     Final Distribution.     After the application or distribution of the proceeds of the liquidation of the Company's assets in one or more installments to the satisfaction of the liabilities to creditors of the Company, including to the satisfaction of the expenses of the winding-up, liquidation and dissolution of the Company (whether by payment or the making of reasonable provision for payment thereof), the remaining proceeds, if any, plus any remaining assets of the Company shall be distributed to the Members in accordance with Sections 4.3 and 8.2, as applicable.

Section 11.4     Time for Liquidation, etc.     A reasonable time period shall be allowed for the orderly winding up and liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Company to seek to minimize potential losses upon such liquidation. The provisions of this Agreement shall remain in full force and effect during the period of winding up and until the filing of a certificate of cancellation of the certificate with the Secretary of State of the State of California.

Section 11.5     Termination.     Upon completion of the winding up of the Company, the Manager (or any duly elected liquidating trustee or other duly designated representative) shall execute, acknowledge and cause to be filed a certificate of cancellation of the Certificate with the Secretary of State of the State of California. Upon the cancellation of the Certificate, this Agreement and the Company shall terminate.

Section 11.6     Return of Contribution Nonrecourse to Other Members.     Except as provided by law or as expressly provided in this Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member, except as otherwise provided by law.

ARTICLE XII
DISPUTE RESOLUTION

NY 73548773v3

Section 12.1 <u>Rabbinical Counsel</u>. If any dispute arises between the Members regarding this Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration proceeding to be conducted in the State of California in accordance with the commercial arbitration rules of the Rabbinical Council of California.

ARTICLE XIII
MISCELLANEOUS

Section 13.1 <u>Entire Agreement</u>. This Agreement, taken together with the other documents expressly referred to herein, each as amended or supplemented, constitutes the entire agreement among the parties with respect to the subject matter herein or therein and supersedes any prior agreement or understanding among the parties hereto.

Section 13.2 <u>Other Ventures</u>. The Manager or any Member, and any firm, corporation or association with which the Manager or any Member is in any way interested or connected, may act as attorney for, deal and contract with, and be employed by the Company, and the Manager or any Member may be, in any manner, interested in or connected with any corporation, association or business in which the Company is directly or indirectly interested, all in the same manner and with the same freedom as though not a Manager or a Member, as the case may be, and without accountability for any profit, benefit or compensation received in connection with such actions or relationships, none of which shall be void or voidable.

Section 13.3 <u>Amendments</u>. This Agreement may be amended only with the written consent of a Majority in Interest; provided that any such amendment that materially adversely affects the rights and privileges of any Member (other than any amendment effected in connection with the making of a Capital Contribution to the Company by, and/or the issuance of additional Interests to, any Member, including, without limitation, any amendment to the rights and privileges of the Interests to reflect dilution resulting from such Capital Contributions or issuance of additional Interests) must be consented to by each of the Members so affected; provided further, that any amendment to this Agreement shall not be effective without the consent of Rechnitz.

Section 13.4 <u>Choice of Law</u>. This Agreement shall be construed in accordance with the laws of the State of California, without regard to the choice of laws rules thereof, and the obligations, rights and remedies of the Members hereunder shall be determined in accordance with such laws.

Section 13.5 <u>Successors and Assigns; Third Party Beneficiaries</u>. This Agreement shall be binding upon, and, subject to <u>Article X</u>, shall inure to the benefit of, the parties and their legal representatives, heirs, administrators, executors, successors and permitted assigns. Except as otherwise expressly provided herein, none of the provisions of this Agreement shall be for the benefit of or enforceable by any Person not a party hereto.

Section 13.6 <u>Interpretation</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or neuter gender shall include the masculine, the feminine and the neuter.

-18-

Section 13.7  <u>Captions</u>.  Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend or otherwise affect the scope or intent of this Agreement or any provision hereof.

Section 13.8  <u>Severability</u>.  If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement, or the application of such provision in jurisdictions or to Persons or circumstances other than those to which it is held invalid, illegal or unenforceable, shall not be affected thereby.

Section 13.9  <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

Section 13.10  <u>Non-Waiver</u>.  No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given to the party claiming such waiver has occurred; provided that no such waiver shall be deemed to be a waiver of any other or further obligation or liability of the party or parties in whose favor the waiver was given.

Section 13.11  <u>Notices</u>.  All notices, requests, demands, claims and other communications that are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by confirmed facsimile with a copy sent by another means specified herein; the business day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and five business days after the date mailed by certified or registered mail, postage prepaid, if sent by certified or registered mail, return receipt requested.  In each case notice shall be sent to:

if to the Company:

c/o Shlomo Rechnitz
    5697 W. 3rd Street, Suite 200, Los Angeles, California 90036.

with a copy to:

Leslie Klein
14245 Ventura Blvd., Sherman Oaks, CA 91423

and if to a Member, to the Member's address or facsimile number on the books records of the Company, or to such other address with respect to the Company or a Member as the Company or such Member, as applicable, notifies the Company and the other Members in writing as provided above.

-19-

ARTICLE XIV
DEFINITIONS

Section 14.1    Definitions.

References in this Agreement to an "**Exhibit**" are intended to refer, unless otherwise specified, to an Exhibit attached to this Agreement, and references in this Agreement to an "**Article**" or a "**Section**" are intended to refer, unless otherwise specified, to an Article or a Section of this Agreement. As used in this Agreement, the following terms shall have the respective meanings set forth below:

"**Account Bank**" means PrivateBancorp, Inc.

"**Act**" shall have the meaning specified in the recitals to this Agreement.

"**Affiliate**" means any Person that, directly or indirectly, through one or more intermediaries, is Controlled by one or more Members. As used in this definition, "Control" means either (a) the ownership, directly or indirectly, of at least fifty percent (50%) of the voting stock of a corporation, or in the case of any Person which is not a corporation, the ownership, directly or indirectly, of at least fifty percent (50%) of the beneficial ownership interests in such Person, or (b) irrespective of stock ownership or other beneficial ownership, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person.

"**Agreement**" means this Amended and Restated Limited Liability Company Agreement, as the same may be amended hereafter from time to time as provided herein.

"**Available Cash**" means, at the time of determination, cash generated from revenues from the Company's operations, after provision has been made for (a) all expenditures paid or to be paid by the Company to non-Members and (b) such amounts as the Manager, in his sole discretion, shall deem reasonable in order to provide for any anticipated, contingent or unforeseen expenditures or liabilities of the Company. Available Cash shall be determined without regard to (i) Capital Contributions and (ii) principal advanced on Company indebtedness.

"**Beneficiary**" means, with respect to the Policy, the legal person or persons designated as the recipients of the Death Benefit for such Policy.

"**Capital Account**" means, with respect to any Member, the Capital Account maintained for such Member by crediting such Member's Capital Contributions, such Member's share of Net Income, and the amount of any Company liabilities that are assumed by such Member (other than liabilities that are secured by any Company property distributed to such Member) and by debiting the amount of cash and the gross fair market value of any Company property distributed to such Member pursuant to any provision of this Agreement (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Code Section 752), such Member's share of Net Losses, and the amount of any liabilities of such Member that are assumed by the Company (other than liabilities that are secured by any property contributed by such Member to the Company).

-20-

"**Capital Contribution**" means, with respect to any Member, the amount of money and the initial gross fair market value of any property contributed (or deemed contributed) from time to time by such Member to the Company (net of any liabilities secured by such property or to which such property is otherwise subject). The initial gross fair market value of each Policy contributed by Klein shall equal the sum of the total amount of premium payments made on such Policy by Klein and all other costs and expenses incurred by Klein in servicing and maintaining such Policy as of the date of this Agreement. Any reference in this Agreement to the Capital Contribution of a Member shall include the Capital Contribution made by any predecessor of a Member. For purposes of this Agreement, a Capital Contribution shall include, without limitation, any Initial Capital Contribution.

"**Certificate**" has the meaning set forth in Section 1.1.

"**Change Forms**" means the forms changing the owner and Beneficiary of the Policy using such form as is required by each of the relevant issuing insurance companies.

"**Code**" means the Internal Revenue Code of 1986, as amended, and as the same may be amended hereafter from time to time.

"**Company**" shall have the meaning specified in the preamble hereto.

"**Consumer Information**" means medical, health, financial and personal information about an Insured, an Original Owner, a Beneficiary under a Policy or a person designated by an Insured to provide periodic information regarding the medical status of the Insured, or any spouse or other individual closely related by blood or law to any such person (each, a "**Consumer**"), including, without, limitation, a Consumer's name, street or mailing address, email address, telephone or other contact information, employer, social security or tax identification number, date of birth, driver's license number, photograph or documentation of identity or residency (whether independently disclosed or contained in any disclosed document such as a Policy, life expectancy evaluation, life insurance application or life settlement application).

"**Covered Person**" shall have the meaning specified in Section 6.5(a).

"**Death Benefit**" means the cash amount of a Policy to be paid upon the death of the applicable Insured under such Policy, which amount will be net of any policy loans made under such Policy (and accrued interest thereon).

"**Disposition**" shall have the meaning specified in Section 10.5(a).

"**Disposition Notice**" shall have the meaning specified in Section 10.5(a).

"**Dissolution Date**" shall have the meaning specified in Section 11.1.

"**Fiscal Period**" means, subject to the provisions of Section 706 of the Code, (i) any Fiscal Year and (ii) any portion of a Fiscal Year for which the Company is required to allocate Net Income, Net Losses or other items of Company income, gain, loss or deduction pursuant to Article IV.

"**Fiscal Year**" shall have the meaning specified in Section 1.7.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Indemnified Liabilities**" shall have the meaning specified in Section 6.12.

"**Indemnified Person**" shall have the meaning specified in Section 6.12.

"**Initial Capital Contribution**" means, with respect to each Member, such Member's Initial Capital Contribution set forth on Schedule A.

"**Insured**" means, with respect to a Policy, each person whose life is insured under such Policy.

"**Interest**" means, with respect to any Member, (a) such Member's share of the profits and losses of the Company and a Member's rights to receive distributions from the Company in accordance with the provisions of this Agreement and the Act and (b) such Member's other rights and privileges in respect of the Company as herein provided.

"**Joinder Agreement**" shall have the meaning specified in Section 10.2(a).

"**Klein Amount**" shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Klein related to such Policy and (y) the Priority Return for Klein on such Policy.

"**Law**" means any law, constitution, statute, ordinance, code, rule, regulation, decision, order, consent, decree, judgment, ordinance, release, license, permit, stipulation or other pronouncement having the effect of law enacted or issued by any Governmental Authority, any foreign country, or domestic or foreign state, country, city or other political subdivision, which includes binding judicial precedent and principles of common law.

"**Lender**" shall mean each lender identified on Schedule C.

"**Majority in Interest**" means Members that at the time in question together hold a Percentage Interest greater than 50% in the aggregate.

"**Manager**" means one or more persons designated as such pursuant to this Agreement.

"**Members**" means, collectively, the members signatory to this Agreement, and any other Persons admitted to the Company as members after the date hereof in accordance with the terms of this Agreement.

"**Net Income**" and "**Net Losses**" means, for each Fiscal Year or other period, an amount equal to the Company's taxable income or loss for such Fiscal Year or other period (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant

to Code Section 703(a)(1) shall be included in taxable income or loss and each item of income, gain, expense, deduction and loss shall be allocable to the Members in accordance herewith).

"**Non-Payment Policy**" shall have the meaning as specified in Section 8.2.

"**Non-Payment Policy Member**" shall have the meaning as specified in Section 8.2.

"**Notice of Intention**" shall have the meaning as specified in Section 10.4(a).

"**Offer Price**" shall have the meaning as specified in Section 10.4(a).

"**Offered Interests**" shall have the meaning specified in Section 10.4(a).

"**Option Period**" shall have the meaning as specified in Section 10.4(b)

"**Original Owner**" means, with respect to a Policy, the Person to which the Policy was initially issued and who was listed as owner on the initial declarations page of such Policy or the policy application, as applicable.

"**Percentage Interest**" means, with respect to any Member as of any date of determination, a fraction (expressed as a percentage) having as its numerator the aggregate number of Interests held by such Member at such time, and having as its denominator the aggregate number of Interests held by all Members at such time. Each Member's Percentage Interest as of the date hereof, and as adjusted from time to time, is set forth on Schedule A.

"**Permitted Transferee**" means (a) with respect to any Member who is an individual, such member's siblings, parents, spouse (former spouse, if any), and children, and trusts solely for the benefit of any of the foregoing, and (b) with respect to any Member that is an entity, an Affiliate of such Member.

"**Person**" means any individual or any corporation, partnership, limited liability company, limited liability partnership, joint venture, estate, trust, unincorporated association, business trust, tenancy-in-common or other legal entity.

"**Policy**" means each of the life insurance policies contributed to the capital of the Company by Klein, as specified in Schedule B hereto.

"**Policy File**" means, with respect to a Policy, the file relating to such Policy which file shall include, without limitation, the Policy, the original application for such Policy, any Policy Illustration and any other documentation in Klein's possession.

"**Policy Illustration**" means, with respect to a Policy, a policy illustration from the related issuing insurance company.

"**Polter**" shall have the meaning set forth in Section 6.2.

-23-

"**Priority Return**" of a Member with respect to any Policy shall mean an annual rate of return of 12% on the total amount of Capital Contributions made by a Member with respect to such Policy from the date such Capital Contribution were made but computed no earlier than from the date of this Agreement.

"**Rechnitz Amount**" shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Rechnitz related to such Policy and (y) the Priority Return for Rechnitz on such Policy.

"**Remaining Members**" shall have the meaning specified in Section 10.4(a).

"**Remaining Members Notice**" shall have the meaning specified in Section 10.4(b).

"**Remaining Members Option**" shall have the meaning specified in Section 10.4(b).

"**Reserve Account**" means account number [____] established at Account Bank.

"**Selling Member**" shall have the meaning specified in Section 10.4(a).

"**Third Party**" shall have the meaning as specified in Section 10.4(a).

"**Transfer**" means, as a noun, any voluntary or involuntary, and direct or indirect, assignment, transfer, pledge, syndication, sale, hypothecation, contribution, encumbrance or other disposition or purported disposition, and, as a verb, voluntarily or involuntarily, and directly or indirectly, to assign, transfer, pledge, syndicate, sell, hypothecate, contribute, encumber or otherwise dispose of.

"**Tax Matters Member**" shall have the meaning specified in Section 9.4.

"**Treasury Regulations**" means the Income Tax Regulations promulgated under the Code, as the same may be amended hereafter from time to time.

*[Remainder of Page Intentionally Left Blank]*

-24-

IN WITNESS WHEREOF, the undersigned have executed this Limited Liability Company Agreement as of the date first set forth above.

SHLOMO RECHNITZ

_____

LESLIE KLEIN

_____

## SCHEDULE A

| Member | Initial Capital Contributions | Interests | Initial Percentage Interest |
|---|---|---|---|
| Rechnitz | $3,800,000 | 1 | 50% |
| Klein | $_____] | 1 | 50% |

NY 73548773v3

**<u>SCHEDULE B</u>**

**POLICIES**

**[See attached]**

NY 73548773v3

**SCHEDULE 7.1(D)(XII)**

**POLICIES IN GRACE**

NY 73548773v3

## EXHIBIT A

### JOINDER AGREEMENT

Life Capital Group, LLC
c/o Shlomo Rechnitz
5697 W. 3rd Street
Suite 200
Los Angeles, California 90036

Leslie Klein
14245 Ventura Blvd.
Sherman Oaks, California 91423

Ladies and Gentlemen:

[_____] (the "**Transferee**"), the transferee of [_____] Interests and a capital account of $[_____] (the "**Transferred Interests**") of Life Capital Group, LLC, a California limited liability company (the "**Company**"), from [_____], hereby joins in and agrees to be fully bound, as if an original party thereto, by the Amended and Restated Limited Liability Company Agreement, dated as of __, 2011 (as amended, supplemented or otherwise modified from time to time, the "**Limited Liability Company Agreement**"), among the Company and the Members named therein, including, without limitation, the restrictions on transfer set forth therein, and shall be entitled to all of the rights and benefits thereof applicable to the undersigned as a Member. Capitalized terms used but not defined herein have the meaning ascribed to them in the Limited Liability Company Agreement.

In connection with the Transferee's joinder to the Limited Liability Company Agreement, the Transferee represents and warrants to the Company as follows:

1.      The Transferee has full power, authority and right to execute and deliver this Joinder Agreement and the Limited Liability Company Agreement and has, and will continue to have during the entire term of the Limited Liability Company Agreement, full power and authority to perform its obligations hereunder and thereunder, and has taken all necessary action to authorize the execution and delivery of this Joinder Agreement and the Limited Liability Company Agreement, as well as the performance of its obligations hereunder and thereunder.

2.      This Joinder Agreement and the Limited Liability Company Agreement constitute the legal, valid and binding obligations of the Transferee enforceable against the Transferee in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

NY 73548773v3

3.  No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by the Transferee in connection with the execution of this Joinder Agreement and the Limited Liability Company Agreement and the compliance by the Transferee with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby or the taking by the Transferee of any other action contemplated hereby or thereby.

4.  The Transferee is a Permitted Transferee.

5.  It has not relied on, and the Company has not made, any representations or warranties to the Transferee.

*[Signature Page Follows]*

## SCHEDULE C

### LENDERS

| Lender | Outstanding Principal Balance |
|--------|-------------------------------|
| Sol Majer | $243,000 |
| Leah Katzsl | $100,000 |
| ~~Ari Majer~~ | ~~$65,328~~ |
| ~~Simcha Mann~~ | ~~$110,000~~ |
| Yisroel Rechnitz | $350,000 |
| Chaim Manella | $600,000 |
| Ben Katzsl | $245,000 |
| Shlomo Rechnitz | $500,000 |
| Hirshy Krich | $240,000 |
| | |
| TOTAL | ~~$2,553,328~~ |

Sch. C-1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **MOTION FOR DEFAULT JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/10/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C Cohen (PL) | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Michael I. Gottfried (IP) | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Nikko Salvatore Stevens (IP) | nikko@cym.law, mandi@cym.law |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Clarisse Young (IP) | youngshumaker@smcounsel.com, levern@smcounsel.com |

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On 1/10/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Leslie Klein, 322 N. June Street, Los Angeles, CA 90001

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 1/10/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 1/10/2024 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
| Date | Printed Name | Signature |